THE PEOPLE *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE HILLS-
DALE AND CHATHAM TURNPIKE ROAD.

A *turnpike company* are bound to erect and keep in repair *bridges* across streams, if they be necessary to render the road passable, although the act incorporating the company be silent upon the subject of bridges.

If a *bridge* be carried away by a sudden flood, the company must rebuild it within a reasonable time, or they will forfeit their charter, *at common law.*

So if in consequence of the destruction of the *bridge* the road be rendered impassable and the business of the company be thereby suspended for the period of *one year*, the company is declared *by statute* to have forfeited its charter; but still a legal course of proceedings must be instituted to obtain judgment of ouster.

Where a road is rendered impassable by a sudden flood, or other irresistible cause, and the injury thereby done to it is alleged in the *replication*, as ground of forfeiture, the defendants, if they have an excuse, must *rejoin*, setting forth the cause of the injury; and then the jury will be bound to pass upon the facts.

Where a turnpike road is out of repair, the public are not limited to the remedy of having *the gates thrown open;* but may proceed by information.

New-York, May, 1840.—People v. Hillsdale and Chatham Turnpike Road Co.

*It seems that where a single act of non-feasance, as to the repair of a road, is relied upon as cause of forfeiture, the attorney-general is bound to aver and prove wilful neglect ; otherwise in respect to a general state of non-repair.*

*To warrant a judgment upon a special verdict, all the essential facts, and not merely the evidence of the facts, must be found by the jury.*

INFORMATION in the nature of a *quo warranto*. In July term, 1837, the attorney-general filed an information in this case charging the company with with usurping the liberties and privileges of a turnpike company : to construct a road, erect turnpikes thereon and collect tolls from passen-[* 255 ] gers. The *defendants pleaded an act of the legislature passed 2d April, 1805, incorporating them as a turnpike company by the name now used by them, conferring upon them the privilege of constructing a road between certain points of territory, and upon the same being completed and approved and a license obtained by the governor of the state, to erect gates thereon and collect tolls from travellers. They then allege that they completed the road ; that it was viewed by commissioners and approved by them, and that a license was obtained from the governor, &c. To this plea the attorney-general interposed six replications specifying various defects in the original construction of the road, and that such defects still continued to exist ; he also put in a *seventh* replication in these words : " And the said attorney-general for the said people, further saith, that the said President, Directors and Company of the Hillsdale and Chatham Turnpike Road have not done or performed all those acts, duties, or things, or any of them, which were required of them in and by the said act of incorporation set forth in their said plea and the several acts amendatory thereof, either in working, making, constructing, completing, finishing, or keeping in repair said turnpike road, and this, &c. wherefore, &c." To the seventh replication, the defendants rejoined in terms as general as the replication that they *had performed*, &c. concluding to the country. Issues of fact were also joined upon the other replications, and the cause was brought to trial. A special verdict was found, in which among other things the jury say, " That the bridges on said road are not and have not been built and kept up by the said President, Directors and Company according to law ; but on the contrary, the *bridge* on said road at *Chatham-Four Corners* was carried away by a freshet in *March*, 1836, and not rebuilt until the month of *June*, 1837 ; and that the *bridge* on the said road in *Chatham*, near J. J. Van Valkenburgh's house, and the *bridge* on said road in *Austerlitz*, were also *carried away* by a freshet at the same time and *permitted to remain in that situation* for more than one year." (Also) " That said road was impassable by the destruction of the bridges, and remained [ *256 ] so for more than *the space of one year*, and the gates of said road were raised for the same length of time from the —— day of —— 1836, to the —— day of —— 1837." (Also) " That two persons were elected directors of said company and acted as such on, &c., who were not at the time of their election or during their term of office stockholders."

New-York, May, 1840.—People v. Hillsdale and Chatham Turnpike Road Co.

The facts found by the jury as above stated, were all found under the *seventh* replication, the other replications having no reference to those facts; and as the above finding only is passed upon by the court, the verdict of the jury upon the other issue is not stated.

*Willis Hall*, (attorney-general) for the people.

*A. P. Holdridge*, for the defendants.

*By the Court*, COWEN, J. The sufficiency of the pleadings in this case have not been questioned. The seventh replication, under which the special verdict was found, is too general to be maintained for any purpose, though this objection might be answered by showing substantial defects in the plea. I make the remark, in order to avoid such a replication being drawn into precedent; not to raise a point which the parties have doubtless waived by mutual consent, for the purpose of reaching the merits. This they had a right to do. The arguments of counsel thus having been confined entirely to the special verdict, I have accordingly considered that only as presented for our examination. The better opinion, perhaps, is, that a destruction of bridges which, by not being restored, leaves the road impassable for any considerable length of time, presents such a state of non-repair as would work a forfeiture at common law. The road thus becomes and continues to be a public nuisance. The verdict finds that it was *permitted* to want a degree of repair which every turnpike company undertakes and is bound by law to bestow, as the consideration of their right to tolls and other franchises. But whether that be so or not, it is impossible to avoid seeing, on this finding, that the ordinary business of the corporation must have continued *in a state of suspense for a year or more. We have [ *257 ] had a statute ever since April, 1825, which provides that, " Whenever any incorporated company shall, for one year, have suspended the ordinary business of such incorporation, such company shall thereby be deemed and adjudged to have surrendered the rights, privileges and franchises, granted by any act of incorporation, and shall be deemed to be dissolved." *Act of* 1825, *Sess. Laws*, 455, § 6. 1 *R. S.* 604, 605, § 4, 2*d ed.* That is to say, an information may be filed, and pursued to judgment of dissolution; not that the corporation shall be deemed at an end without such proceeding. *Bank of Niagara* v. *Johnson*, 8 *Wendell* 645, 654. *Vide* 9 *id.* 382. *Atchafalaya Bank* v. *Dawson*, 13 *Louisana R.* 497, 504. Both these cases cite and explain *Slee* v. *Bloom*, 19 *Johns. R.* 456. 473. The finding of the jury brings the company within the very words of the act. This, according to the case cited from 13 *Lou. R.* would not of itself destroy the existence of the corporation, even if it had declared the suspension to be *ipso facto* a dissolution, but would only be understood as

furnishing a substantive ground for a judicial proceeding. Indeed, it was not even questioned by the defendant's counsel, that, if a suspension were found, within the words of the act, and the ground of forfeiture so furnished were not done away by the circumstance of there being other remedies, or by some matter in excuse, or in bar, judgment must pass against them.

It is accordingly insisted for the defendants, that the public were furnished by law with *other remedies* besides this information, such as opening the gates, which it seems was in this case actually done, or an action, &c. The value of this objection, I had occasion to consider in *The People* v. *The Directors of the Bristol and Rensselaerville Company*, ante, 222. I am entirely satisfied it could form no bar to this proceeding, even admitting, what does not appear, that the gates were opened under the judicial order of an inspector of turnpikes, pursuant to the statute. 1 *R. S.*
[ *258 ]   588, 589, 2d ed. Such a step if noticeable at all, would *operate rather to ascertain and strengthen the case against the company, than as furnishing matter of defence.

But it is said *non constat* that the road may not have been in fact repaired and under full operation previous to the commencement of this suit, which it is supposed, on the authority of *The People* v. *The Niagara Bank*, 6 *Cowen*, 196, 211, would be a bar. But I do not understand that case as laying down any such thing by way of general position. Such a doctrine would, I apprehend, be entirely without precedent. When a cause of forfeiture has once arisen, whether from *non-feasance* or otherwise, no case nor *dictum* can be found that it shall be legally atoned for by subsequent good behavior. The authority cited, turned upon the construction of a statute-providing for the particular case of the Niagara Bank stopping payment. The argument goes to prove that a corporation may practice all manner of abuse by commission or omission, if it be careful to stop before the attorney-general can be informed, and institute a prosecution.

It is said the defendants may be entirely without fault; that the bridges may have been carried off by inevitable accident, and that, to warrant a forfeiture, the jury should have found *neglect*. That is a question I also examined in *The People* v. *The Bristol and Rensselaerville Conpany*. I there inclined to think the finding of neglect would be material, as to a single act of non-feasance, though I thought it quite doubtful, whether so much were necessary, even at common law, in respect to a general state of non-repair. But the case before us is made a cause of forfeiture by statute. If the bad repair was occasioned by a flood or any irresistible cause, it lay, I think, with the defendants to show that fact. Beside, the jury find that the road was *permitted* to remain out of repair; by whom? By every body, including the company. The permitting this so long as a year or more, shows that they did not fulfil the trust confided to them by the public. We are told the statute of incorporations says nothing about the bridges.

This omission may indeed take the case out of the first subdivision of § 39 *of 2 R. S.* 483, 2d ed. But the bridges are an essential part of *the road. It appears by the verdict, to be impassable without [ *259 ] them. To keep them in repair, therefore, was a part of the defendants' general duty, a violation of which works a forfeiture at common law ; and, continued for a year, so as to interrupt the ordinary business of the company, it is beside made a specific ground of forfeiture by another statute which I have cited, and endeavoured to explain.

I agree that, to warrant judgment on a special verdict, all the essential facts, not merely evidence of facts, should be found by the jury, according to the case cited of *Barnes* v. *Williams,* 11 *Wheat.* 415. I think they have been so found in this case, upon the head of non-repair and suspension of business. The case in *Wheaton* was directed, by counsel particularly, to another branch of the special verdict : that which respects an irregularity in the election of directors, which is very imperfectly stated ; but I do not go upon that.

It is true, as I thought in *The People* v. *The Bristol and Rensselaerville Turnpike Company,* that the award of the commissioners and governor's license, are conclusive as to the construction of the road, up to the time of the award. But its ill condition is found to have existed many years since the licence was granted. I do not regard the finding on any of the issues so far as it is contrary to the award. On the whole, I think there should, in this case, be judgment of ouster and dissolution.

The Chief Justice and Mr. Justice Bronson concurred in the views expressed, as above, by Mr. Justice Cowen, except as to the effect of the governor's *license* to erect gates. In respect to which they differ in opinion with Mr. Justice Cowen, and entertain the views set forth in the opinion of the Chief Justice, in *The People* v. *The Kingston and Middletown Turnpike Company, ante,* 193.

Judgment of ouster and dissolution.