## SMITH v. N. Y. CENTRAL R. R. CO.

December, 1868.

Where a verbal contract refers to a written instrument not as a contract, but as containing some of the terms of the parol contract, it is not necessary, in order to admit the writing in evidence in establishing the verbal contract, to prove the execution of the writing, but identifying it is enough.

The case of an agreement to deliver a specified number of cords of fire, wood, to be cut from standing trees, is not a contract for manufacture, but is a sale, within the meaning of the statute of frauds.*

William B. Smith sued defendants, in the supreme court, for wood sold, at Paddleford, and at Farmington.

In the case of the sale at Paddleford there was a written contract, made by defendants with plaintiff and one Brown, and defendants claimed that the wood now sued for was embraced in that contract, or if not, its delivery was authorized by parol stipulations made at the same time as the written contract. Brown assigned his claim to plaintiff.

In the case of the sale at Farmington, plaintiff showed his trees standing, to defendants' agent, and named his price, and declined to make a written contract, and was told he might "haul it on the old contract." He cut and hauled a large quantity and piled it on his own ground, near the station. He testified that the agent consented to this as a place of delivery. The agent said that there being no written contract, he could not measure this wood without express authority from his superior officers. Meanwhile an execution was issued against plaintiff, and the agent accepted the wood as delivered under the contract of one Devoll, and it was paid for by the company, and the money applied on the execution. Plaintiff went on hauling, and piling on his own land, all the quantity agreed for, but the agent did not measure and take the residue.

The details appear fully in the opinion.

* Compare Parsons v. Loucks, 48 N. Y. 17, affirming 4 Robt. 216; Hoffman v. Passaic Mfg. Co., 3 Daly, 495; Stephens v. Santee, 49 N. Y. 35 ; reversing 51 Barb. 532.

Smith *v.* N. Y. Central R. R. Co.

By the Court.—Woodruff, J. [After disposing of minor exceptions.]—One objection, however the counsel has treated as not included in the class referred to, but as relating to the competency of evidence, going to the merits of the controversy, viz: to the question whether any, and, if any, what, contract was made between the parties? That exception we are, therefore, called upon to consider; and it raises the question, was it competent to read what is called throughout the case the "old contract," in evidence, without proving the execution thereof by a subscribing witness?

That depends, in my judgment, singly and solely on the question, whether any of the wood for which this action was brought, and for which recovery was had, was embraced within that contract and delivered under it as a subsisting contract, out of which the obligation of the defendants to make payment arose.

Whether the plaintiff so claimed on the trial is not very clear.

The contract was dated December 1, 1856, and related solely to wood to be delivered by plaintiff and John T. Brown, at Paddleford. It bound them to deliver, on or before August 1, 1857, four hundred to six hundred cords of good, sound, first quality wood, . . and fifty to seventy-five cords of second quality wood, . . split, piled, &c.

The plaintiff, examined in support of his own claim, testified: "Brown and I delivered at Paddleford *under the written contract*, in the winter of 1856, 1857, and 1858. There is in the neighborhood of one hundred and fifty cords that has not been measured or paid for. This is the last contract made with the company. Most of that wood lies on the ground of the company; some of it is in the highway. I was at home every time that previous measurements were made under that contract."

The assignment of Brown to the plaintiff also conforms to this statement, though it describes a less quantity. Thus: Brown assigns " all my right, title and interest to about fifty cords of wood, be the same more or less, which is now corded or piled up at Paddleford's wood station. . . being the same wood cut on the premises, bought of Huldah Goodell by said

W. Barclay Smith, *and drawn and delivered at said station, under a contract made between* W. Barclay Smith and John T. Brown, with said railroad company."

Although the wood was not drawn until after August 1, 1857, the time of delivery mentioned in the contract, nevertheless, if the plaintiff claimed to recover therefor on the ground that it was drawn, delivered and accepted under that contract, as the testimony of the plaintiff and the assignment of Brown both state, then it is clear that the contract was the operative instrument by which to determine the rights of the parties. In this view the contract was not a matter collateral to the cause of action, but must be directly proved in order to a recovery, and as much so as if the claim had been to recover for wood delivered under it before August 1, 1857; and it follows, that, in this view, it was not competent to read the contract in evidence, as the operative contract upon which the plaintiff sought to recover, unless, nor until, its execution was proved by the subscribing witness, or the failure to produce the witness was properly excused.

On the other hand, the plaintiff's witness and co-contractor, Brown, gives a different account of the matter. He says, that, prior to August, 1857, they had not drawn enough to fill their contract, and that, in the fall of 1857, they drew the remainder; that it was received *and paid for*.

The theory upon which the contract was received in evidence was, that the wood at Paddleford, claimed for in this action, was wood drawn there in 1858, after the written contract had been completely performed, and was in excess of the quantity called for by that contract.

What, then, was the contract or agreement on the part of defendants for this excess? The testimony of the plaintiff excludes the idea that the wood was in excess when he represents it as delivered under the written contract; but his witness, Brown, represents, that when the written contract was made, Young, the defendants' agent, wished him to make the contract for five thousand cords, and that, when plaintiff and Brown declined doing so (stating that they would not bind themselves to bring more than they could get out, but that he, Brown, thought they could get out more than was called for by the

contract), Young told them to "bring it on and he would take and pay for all they could get on" [out]. "He agreed to pay for all we should deliver, more or less." "The lot was one we purchased with the wood on it, and Young said he knew the woods. We told him if we cut the wood on the lots we would deliver it. Agreed [he agreed] to take it all if we would deliver it. . . This wood now at Paddleford was from that lot. That conversation with Young was *at the time that contract was made,* either in the fall of 1856, or winter of 1857."

This is the evidence relied upon as showing that the defendant purchased the wood at Paddleford, for which the plaintiff claimed to recover in this action, and it is, manifestly, upon the theory, that this wood was delivered in excess of the quantity mentioned in the written contract, and was delivered upon the idea, that this conversation with Young warranted the plaintiff and Brown in delivering all that could be cut from that wood lot, and bound the defendant to receive and pay therefor; that the plaintiff was deemed at liberty to put the written contract in evidence, to ascertain the price and other terms of the parol agreement.

If the reception of the contract in evidence, without calling the subscribing witness, depended solely upon this testimony and its relation to the Paddleford wood, I should greatly doubt the correctness of the ruling.

It permits the inquiry whether, when it is shown that the parties negotiated and entered into a written contract for the purchase and sale of from four hundred to six hundred cords of wood, one of them can be permitted to prove, that at the same time the parties verbally agreed that the quantity of wood might be increased by the seller to a larger number of cords, and that the excess should be paid for upon the terms and at the price named in the writing, and to establish this state of facts, give the writing in evidence without proving its execution.

The objection that all verbal negotiations and stipulations are merged in the writing, forbids any such proof. But as this objection does not appear to have been specifically taken on the trial, the question recurs, was it competent to give the contract in evidence on the other grounds urged?

If, then, it be assumed that such a verbal contract could be made concurrently with the execution of another agreement in writing, and it is necessary, in order to ascertain the price and terms of the verbal agreement, to produce the writing, is it necessary to prove the execution of the writing, or will it be sufficient to identify it as the writing to which the verbal agreement refers?

This presents the same question as was raised by the proof as to the Farmington wood. The plaintiff alleged, that in October, 1857, nearly one year after the execution of the agreement, Young agreed to buy the Farmington wood from him, upon the terms of the "old contract," i. e., the contract made by plaintiff and Brown.

Here, I think it clear that the case presented an agreement lying wholly in parol; some of the terms of which were contained in a writing used by way of reference, not as containing any operative words of obligation, but as rendering the verbal agreement definite in details.

In this aspect, it is wholly immaterial whether it is signed or not. It is referred to, not as the obligation of the parties, but as a memorandum, showing what obligations the parties verbally assume.

For illustration: Parties agree verbally upon a sale of wheat, and that the price and place of delivery shall be the same as are specified in the memorandum book of the superintendent of a certain mill. Now, it is of no consequence how informal that memorandum may be, nor whether signed by any one. When the memorandum is produced it serves, not to show an obligation, but to fix the terms of an obligation resting wholly in parol, which is thereby definite and certain.

This is true of any paper which, by reference, is made part of a verbal contract; all that is necessary is to identify it as the paper referred to, and when identified it serves the purpose of the reference, whether signed or not signed, whether formal or informal.

There was, therefore, upon the theory on which the case was tried, no error in permitting the written contract to be read for the purpose of fixing the terms and details of the alleged parol agreement.

The principal question arising on the merits relates to the validity of the parol contracts, and the effect of what was done by the agent of the defendants.

It is quite clear, that the alleged contract for the purchase of the wood was within the statute of frauds. The claim of the plaintiff to treat it as an agreement for work and labor in manufacturing firewood out of standing trees, cannot prevail. It would be indecorous to say that distinctions on that subject have in some instances been made, which seem rather designed to evade the provisions of the statute than to guard against the evils which the statute was designed to prevent. There would seem no very sensible reason for holding, in reference to two verbal contracts with wagon makers for the purchase and delivery of twenty wagons on a future day named, that one is void because the one wagon maker has the wagons on hand, and the other is valid because the other wagon maker must manufacture them in order to their delivery at the time appointed. Without, however, disregarding the cases which hold that, where the substance of the contract is work and labor to be done in converting materials into a new and totally different article, it is not within the statute; we may say that there is no just notion of manufacture involved in an agreement to deliver a specified number of cords of firewood. No change in the thing sold and to be delivered is contemplated. The circumstance that it stands in the woods at the time, involves nothing more than a necessity to cut it, that it may be delivered. In this respect it is not different from a purchase and agreement to deliver wood of a prescribed length, split into pieces of convenient size, the parties knowing and intending that delivery shall be had of wood already cut, but of a greater length and not split at all.

It does not differ from a sale of wheat not yet threshed, held to be within the statute. Downs v. Ross, 23 Wend. 270. In the case of Garbutt v. Watson, 5 Barn. & Ald. 613, where a sale of flour by a miller was held within the statute, although not yet ground when the bargain was made, the court of king's bench regard the substance of the transaction, viz: a sale of goods, and not the mere incident that some labor would be necessary to enable the seller to deliver; and regard the case of

Towers v. Osborn, 1 *Strange*, 506, where the agreement was for the sale of a chariot not yet manufactured, as an extreme case, which ought not to be carried any further. And in Smith v. Surman, 9 *Barn. & C.* 561, where the agreement was for the sale of timber, the trees from which it was to be cut then standing on the vendor's land, the court of king's bench held, 1st, that it was not a sale of growing trees, so as to be a sale of land, or an interest in or concerning the same, but, 2nd, that it was a sale of goods within the statute. BAILEY, J., says: "The vendor, so long as he was fitting it and preparing it for delivery, was doing work for himself and not for the defendant." LITTLEDALE, J., says: "Where the contracting parties contemplate a sale of goods, although the subject matter at the time of making the contract does not exist in goods, but is to be converted into that state by the seller bestowing work and labor on his own raw material, that is a case within the statute. It is sufficient, if, at the time of the completion of the contract, the subject matter be goods, wares and merchandise." I cannot assent to any case which has decided that such a contract is not within the statute.

But without entering further into the discussion of the broad proposition stated by Justice LITTLEDALE, or the differing views expressed in our supreme court in Downs v. Ross, I think that here is no just pretense for calling the agreement one for work and labor to be done for the defendant, and that it is plainly within the statute.

If, then, the alleged verbal bargain between the plaintiff and Young, the defendants' agent, for the purchase of wood at Farmington, was within the statute, it was void, and the defendants were not bound thereby.

If liable at all, it is because the plaintiff delivered, and the defendant accepted the wood. The case was sent to the jury upon that view of the law governing the case.

If the case had been submitted to them to determine, upon all the evidence, whether the defendants accepted the wood, or any part of it, as a delivery under the agreement, and the jury had found affirmatively, the only question in this court would be, was there any evidence to warrant the submission of the question to the jury?

But the question submitted was, whether the jury believed the plaintiff and his witnesses, or believed the agent of the defendants, Young; and they were told that if they believed the former, the plaintiff was entitled to recover; that, if they believed the latter, the defendants were entitled to their verdict.

I think that there was error in this, which may have operated to secure to the plaintiff a verdict to which he was not entitled; for, as it appears clear to me, the jury may have credited the plaintiff's testimony, and it yet be certain that there was no acceptance of this wood or any part of it.

1. In the first place, as to the Farmington wood: According to the plaintiff's statement, Young, in October, 1857, after examining the trees in the woods, consented to take the wood, and proposed to draw up a contract therefor; the plaintiff declined, declaring his unwillingness to bind himself in case he should accept a situation at the West. Young told him that if he did not stay at the West and should return, he might draw it on the old contract. This was neither assented to nor refused by the plaintiff. And, manifestly, at this time, there was no contract whatever. If there were no statute of frauds, here was not even a verbal contract which bound the parties to anything. Afterward, without any renewal of negotiations, or even notice to the defendants of any intent to accept Young's proposal, the plaintiff began to cut the wood, and in February he began to draw wood to Farmington station, and, seeing Young, asked his consent to deliver wood on his own (the plaintiff's) land, and Young consented. As no wood was delivered anywhere else, it is a just inference that this was before any wood was actually drawn. To this stage nothing had occurred which conferred title on the defendants, or which could have prevented the plaintiff making any disposition of the wood which he saw fit; there was nothing which could be construed to be an acceptance of the wood. All that Young had said was prospective.

The actual deposit of wood on the plaintiff's land, near the station, in pursuance of the consent thus given, was not, *per se*, an acceptance, and yet nothing else took place until the plaintiff was, according to his own testimony, distinctly in-

formed by Young that he could not measure the wood which had been brought, because the plaintiff had no written contract; this was about February 22. It may be true that, had the wood been accepted, the fact that the old contract (which is claimed to have been made, by reference, a part of the parol agreement), contemplated a measurement by the defendants to ascertain the sum to be paid, would not prevent a recovery by the plaintiff when the defendants refused to measure; but it is a significant fact that this contract in terms contemplated approval and acceptance by the general wood agent. It was thus one of the very terms of the writing which the plaintiff relies upon to fix the details of the parol agreement, that there should be an actual acceptance before the plaintiff should be entitled to payment for the wood—a refusal to accept without just cause, might make the defendants liable for a breach of contract, but without such actual acceptance the wood would not be theirs, nor would they be liable as for wood delivered and accepted. So the statute, where the agreement is by parol, contemplates some act, or at least assent of the purchaser, either contemporaneous with, or subsequent to, the act of the vendor which constitutes delivery on his part, which act or assent indicates acceptance of the thing sold. Here the first act or declaration of the defendants' agent after the consent that the wood be delivered on the plaintiff's own land, was substantially a refusal to accept it.

To my mind, it is quite apparent from the testimony of the plaintiff and his witnesses, that it was the act of measuring the wood to which he and those of his witnesses who delivered wood, all looked as the act which made the wood the property of the defendants, and entitled them to payment.

With the consequences of a refusal to accept where there was a binding contract, we have nothing to do in this case.

There is no pretense, moreover, that the general wood agent, the very person who, as contemplated by the written contract referred to, was to accept, ever saw the wood, or consented to receive it.

To return to Young: Having distinctly informed the plaintiff that he could not measure the wood because there was no written contract, he also informed him that he was going to

Albany, and would induce the general wood agent to allow him to measure the wood. Whatever inferences the plaintiff had been theretofore warranted in drawing from the acts of Young, touching his authority to bind the defendants by purchasing and accepting the delivery of wood, the plaintiff was now distinctly apprised, that, there being no written agreement binding the company, because he had refused to enter into such an agreement, he (Young) had no authority to act in the matter without the authority of the general wood agent, by whom, under the written contract, the wood was to be accepted. He told the plaintiff that he could not measure it, but was going to Albany, and would induce the general wood agent to allow him to do so. Unless acceptance may be inferred not only without the affirmative act or assent of a party, but against his will, here was no acceptance.

Doubtless the plaintiff believed that the approval and acceptance of the general wood agent would be obtained by Young, for he continued to draw wood, but he had become apprised that his wood was not accepted on the mere act of drawing and depositing, and that Young could not measure it, because there was no contract binding the company to receive it. All that took place afterward is in harmony with this; Young constantly declined to measure it, but encouraged him to believe that he would do so at a future time.

The levy of the sheriff upon all the wood which had been drawn and deposited down to March 22, was acquiesced in by the plaintiff, a fact wholly inconsistent with the idea that the wood had been accepted by the defendants. The expedient which was devised by Young, in kindness to the plaintiff, and to assist him in his embarrassment, viz: to deliver the wood to Devoll, who had a written contract with the defendants, that thereupon Devoll might deliver the wood under his contract, and then the agents of the defendants could measure it and pay Devoll therefor (whose payment in turn to the sheriff, would tend to relieve the plaintiff);—all this is quite inconsistent with the idea that the wood had, by acceptance, already become the property of the defendants.

All this the jury may have believed, and there is nothing in the other testimony given by the plaintiff and his witnesses,

which is not consistent with this. How, then, could it with propriety, be sent as matter of instruction to the jury, that if they believed the plaintiff and his witnesses, the plaintiff was entitled to recover ?

I am not discussing the evidence under any idea that we are at liberty to review a finding of fact upon the evidence, but only for the purpose of seeing whether the evidence warranted the instruction given by the court. A verdict for the plaintiff was not the necessary legal result of accrediting the plaintiff and his witnesses. On the contrary, the jury, upon the foregoing recited testimony, might have found that the defendants never accepted the wood, and their verdict in that case would have been sustained, and, in my judgment, would have been in most plain conformity to the testimony of the plaintiff himself.

Courts should always, so far as they have power, prevent the statute of frauds from being made itself the instrument of fraud; here the plaintiff was in no such peril. He refused to become bound by a written agreement, and he was very early apprised of its importance by the notice that the agent, Young, could not measure his wood, because there was no such contract.

If the testimony given on behalf of the defendants be considered, there can be no pretense of fraud.

2. The claim of the plaintiff to recover for the wood at Paddleford, stands upon much more slender grounds, and, to my mind, the testimony in regard to that wood, in no wise warranted the instruction to the jury which I have considered.

If any wood was delivered at Paddleford by the plaintiff and Brown, which was not embraced in the written contract,—and this the testimony of the plaintiff himself makes doubtful,— the alleged contract therefor, and the only contract therefor, appears by the testimony of the plaintiff's witness, Brown, to have been made contemporaneously with the making of the written contract.

Is is liable not only to the objection, that if made it was verbal and void by statute, but to the further objection, that it is an attempt where the parties had in writing agreed to a purchase, and for a delivery, of a quantity of wood named in the

writing, to insist upon a contemporaneous parol agreement that the vendor might deliver a greater quantity than the instrument mentioned.

Nevertheless, if a greater quantity was delivered and accepted, the defendants would be bound to pay therefor; but the plaintiff's proof shows no such acceptance, beyond the mere fact that it was drawn to and piled up at the station, and that James Brady, who was in charge of a hand car at that station, told the teamster where to pile it;—unless it be found in Brady's testimony, and he was therefore examined by the plaintiff. He says that "all his orders from Mr. Shaw were to have all the wood that was drawn at that place put close to the track, so as to be got at, and that he told Gilhooly (the teamster), the same as Shaw told him"—that he "was not authorized by Shaw to accept any wood from any body," and that he never did anything with plaintiff's wood except what he told Gilhooly about piling.

Now it must be conceded that when the defendants have legally contracted for the purchase of wood to be delivered at a station, and to be piled as specified in the writing, it is their duty to have some one at the station at the time appointed for delivery, to direct as to the place for piling, and if they have no such agent there, the vendor would be at liberty to pile it without such orders, in any place reasonably convenient for the purposes of the defendants.

But to say that where there is no binding contract of purchase, the general instruction of Shaw (conceding his authority to accept wood not legally contracted for, which is not very clearly proved), would warrant Brady in any act binding them to pay for wood not purchased, I cannot agree.

The mere piling the wood by the plaintiff and Brown, however it may have constituted delivery on their part, was not *per se* acceptance by the defendants, and Brady is one of their witnesses referred to in the instruction in question. He did not assume to buy wood, or to accept wood which had not been purchased; on the contrary, he says he had no authority to accept any wood. He did not assume to direct as to the place of piling wood which had not been purchased; he says he supposed the plaintiff or Gilhooly had a contract.

iv.—18

All the plaintiff's subsequent efforts to induce the agents of the defendants to measure the wood drawn there in excess of the quantity mentioned in the written contract, failed, and I think that the plaintiff's testimony on this subject, so far from establishing acceptance, proves rejection.

In my judgment, the testimony of the plaintiff and his witnesses, in respect to both parcels of wood, fails to show either a valid contract therefor, or an acceptance thereof by the defendants, upon any contract, express or implied, and whatever inferences the jury might have drawn on the subject, I think it was error to instruct them that if they believed those witnesses the plaintiff was entitled to recover; they might have believed those witnesses, and have yet come to the conclusion that there was no such acceptance.

The judgment should be reversed, and a new trial ordered.

All the judges concurred, except CLERKE and BACON, JJ., not voting.

Judgment reversed and new trial ordered, costs to abide event.