Mayham, J.
The people bring this action in the name of the Attorney General to have the charter of the defendant annulled or adjudged forfeited, or the charter privileges of said defendant given and granted by the act of the legislature passed in i860, and the franchise connected therewith, vacated, annulled and declared forfeited.
The defendant was organized under the general railroad act of 1850, and under chapter 303, laws of 1858, for the purpose of building a street railroad from the foot of Broadway in the city of Brooklyn through that street to the village of East New York in Kings county, a distance of four and three-fifths miles. The articles of association were duly filed on August 20, 1858, and the road upon the main line completed in April, 1859, with a paid-up cash capital of two hundred thousand dollars. By chapter 461 of the laws of i860, the legislature provided that it should be lawful for the Broadway Railroad Company of Brooklyn to lay down tracks through other streets not named in the original articles of association forming three branches from the main line, one intersecting the main line at South Sixth street, running thence through Eighth street across Broadway to Ross street, and with a double row of tracks through Ross street to Bedford •avenue to Fulton street, and whenever Nostrand and Rogers avenue should be legally opened, graded and paved, to extend the line of double track through Fulton and Nostrand or Rogers avenues to Flatbush. Another branch was to commence with a single track at South Sixth street, and run thence through Eleventh street to South Fifth street, through South Fifth street to Montrose avenue, through said avenue to Morrell street, through Morrell street to Johnson avenue, to *410 intersect with the track of the defendants’ road at Broadway, with a double track from Morrell street to Johnson .avenue, to its intersection with Cypress Hills plank road, and through the plank road on Cypress avenue, and whenever Cypress avenue shall have been legally opened and graded, to extend a double track on said avenue to the Cypress Hills Cemetery. This-with defendants’ main line formed a continuous line of road from the foot of Broadway to Cypress Hills Cemetery. The third branch provided for by the act of i860, was whenever White, Rogers, or Thames, and Central or Knickerbocker avenues shall be laid out, opened and graded, the company is authorized to lay railroad tracks through White or Bogart streets from the intersection with the Cypress Hill plank road through Central avenue to the city line.
The defendant concedes that it accepted the grant under the act of i860, and soon after the passage of that act, constructed a railroad in Johnson avenue from Broadway to Morrell street, thence along Morrell street to Montrose avenue, thence along Montrose avenue and Fifth street to Hooper street, then along Hooper street-to Broadway, and continued to operate the same until 1876, when they took up the track and abandoned the use of the same, and have not since resumed its use, and that no other part of said' grant has been entered upon and used except about 1,000 ft. in Central avenue in 1887, but which does not connect with the Broadway Railroad or any of its branches.
By section' 14 of chap. 252, of the laws of I884, it is provided that “ Except for necessary crossing, no street surface railroad company shall construct, extend or operate its road or track in that portion of any street,, avenue, road, or highway, in which a street surface railroad is, or shall be lawfully constructed, except with the consent of the company owning and managing the same.” Under this prohibition controversies have *411 arisen, or are likely to arise, between the defendant and the surface railroad companies, particularly the Atlantic R. R. Co., as lessee of the Prospect Park and Coney Island R. R. Co. in relation to the use for railroad purposes of some of the streets and avenues embraced in the grant to the defendant by the act of ■ i860, to which the attention of the attorney general has been directed, and this action is properly brought to settle the rights of the parties, and have it judicially determined whether the defendant has forfeited its charter by not having constructed and operated its railroad over the routes specified in the act of i860.
Two principal questions arise in this controversy, the determination of which may be decisive of the rights of the parties. 1. Was the act of i860 so far a modification of the charter of the corporation, as to make it a part of the same, so that a violation of its provisions, or a failure to perform the acts therein permitted, would work a forfeiture of the charter under the provisions of sections 1798 and 1799, of the Code of Civil Procedure',1 or was it merely a grant of privileges to the corporation, the acceptance and performance of which was in its discretion? 2. Was the time limited by section 3, of the act of i860, for the construction of said railroad in all streets that were opened and paved to October 1,1861 ?■ or was the defendant at liberty under that act to wait until all the streets and avenues covered by that grant within the city were opened, graded, and paved, before it was compelled to construct any portion of the road embraced within the provisions of that act ?
In determining the first question above suggested, recourse must be had to the language of the act itself. That act is entitled', “An act to amend an act to authorize the laying of railroad tracks in Broadway, and through certain other streets in the city of Brooklyn and New Lots in the county of Kings. ■ Chap. 461, laws of i860—amends Chap. 303 of the laws of 1858— *412 which authorizes certain persons therein named to associate themselves together under the general railroad act, and when so associated to construct and operate a railroad on the “ routes therein specified. The first section of the amendatory act provides that it shall be lawful for the Broadway Railroad Company of Brooklyn, organized by virtue of the act hereby amended, to lay down a single line of railroad track commencing ” at its then present track, Seventh street, then giving the line of the proposed route. The sixth section of the act of 1858 authorizes the formation of the Broadway Railroad Company under the general railroad act, and the organization was perfected under that act, or in accordance with its provisions. The defendant was, therefore, a corporation duly organized and invested with all the powers, privileges and franchises of a railroad corporation, before and at the time of the passage of Chap. 461 of the laws of i860. The defendant was, therefore, at the time of the grant conferred by the act of i860, a legal entity with power to take additional grants, and with volition to accept or reject the same, and the act of the Legislature, in granting the right to this corporation to extend its line of road upon other streets than those embraced in the original charter, did not, it would seem, change the charter or become a part of it, but simply conferred the right upon the defendant to extend its track to other streets, and the rights, privileges and franchises, conferred on the defendant by the act of i860, were rights granted after the organization of. the corporation and their acceptance by the defendant, and did not necessarily affect the original grant or charter under which the defendant was organized. It was a particular franchise added to the corporation, subsequent to its first creation, and one which might be defeated by non-user •and the original franchise remain.
It would seem to follow that a right or franchise *413 added to a corporation after its organization, does not constitute a part of the charter (People ex rel. McKinch v. The Directors and Company of the Bristol & Rensselaerville Turnpike Co., 23 Wend. 223, note). In the case at bar the franchise granted by the act of i860 was not the entire franchise of the defendant. It had received under its charter and had for some time been exercising its franchise, in the construction and operation of the Broadway Surface Railroad, in which it had performed all the duties and obligations imposed by its original charter, and there is no claim in this action of any violation of its corporate powers or franchises, so far as its original charter is concerned. The case, therefore, is one where the terms of the original charter have been completely complied with, and the court is asked to forfeit that charter and franchise upon the ground that the conditions imposed upon the added franchise have not been complied with by the corporation.
There is no doubt of the power of the State through the attorney general to maintain an action to forfeit the charter and corporate franchise of a corporation, when the same has failed to perform the business for which it was incorporated. This right existed at common law, and is in this State conferred by statute. In Denike v. N. Y. & R. Lime Co., 80 N. Y. 599, Earl, J., says, “ A corporation may be dissolved by a forfeiture through abuse or neglect of its franchise.’’ In People v. Kingston & Middletown Turnpike Co., 23 Wend. 204, Chief Justice Nelson says, “ The principle is not new. It has always been so held at common law as fundamental. All franchises which are granted are upon condition that they shall be duly executed, according to the charter that settles their constitutions, —and that being a condition annexed to the grant, the-citizens cannot make an alteration; but if they neglect to perform the terms of the patent, it may be repealed. *414 by scire facias and in the same case the court adds, “ A non-performance, therefore, of the conditions of the act of incorporation is deemed “per se a mis-user that will forfeit the grant, even at common law.” And it seems that this rule applies as well to conditions subsequent as to conditions precedent, so that a failure of a railroad company to operate a railroad after its construction would result in a forfeiture for non-user as effectually as a failure to construct in accordance with the provisions of the charter. But no case has been cited where it is held that where the terms of the original corporation have been fully performed, that the same will be forfeited by non-user of additional grants of power or franchise which have not been performed; and in the case of “ The People v. The Bristol and Rensselaerville Turnpike Co., supra’’’ it was expressly said that—“ An abuse in a particular department of an entire franchise is cause for forfeiture of the whole franchise; where, however, a particular franchise is added to the corporation subsequent to the first creation, such franchise may be forfeited and the residue remain.” This case was decided under the Revised Statutes (2 R. S. 489, § 39), which is substantially re-enact edby §§ 1797 and 1798 of the Code of Civil Procedure (see 23 Wend. 232). I am, therefore, of the opinion, that even if it shall be held that the defendant has failed to perform the requirement of the act of i860, and that such failure works any forfeiture, it must be confined to the grant, and franchise added by the provisions of that act.
This brings us to the consideration of the second question above suggested,—was the time for completion of any of the added routes limited to Oct. 1, 1861, or did the act give the defendant until all the additional streets embraced in it were opened, graded, and paved ? The case shows that the defendant soon after the passage of the act of i860, accepted the act and the *415 franchise thereby given, and soon thereafter constructed, built, and operated a railroad on South Sixth street, Eleventh street, South Fifth street, Montrose avenue, Morrell street and Johnson street, and on and upon portions of said streets and avenues, and thereafter and prior to the year 1870, removed said tracks from said streets, and discontinued and ceased to operate a railroad on said streets; and except as the defendant constructed and operated such railroad, it has refrained and failed to construct or operate any road under the act of i860, until January 28, 1887, when the defendant entered upon a portion of Central avenue, and laid a small portion ol railroad track upon which no cars have been run as a railroad. It cannot, upon these facts, be successfully maintained that the defendant completed the tracks upon the said several streets and avenues, or roads named in the first section of chapter 461, of the laws of i860, “on or before Oct. 1, 1861,” and unless it can be held that the succeeding paragraph in § 3 of that act, operates to extend the time for the construction of all the roads granted by that act. The defendant has clearly failed to comply with the terms of the same, that paragraph reads as follows, “or as soon thereafter as said streets and avenues within said city shall be opened, graded and paved.” It is insisted that this last paragraph is a qualification to the whole of the proceedings part of § 3 and that the defendant is by it excused from constructing any portion of said railroad, until all of the lines within the city covered by this grant “ shall be opened, graded and paved,” although the case shows that a large portion of the streets and avenues covered by the grant were at the time of the passage of the act opened, graded and paved, and also that some portion of the same were at the time, and are still being used as farming or agricultural lands.
In determining this question we must ascertain if *416 possible, the intention of the legislature, and so construe the act from the wording of the same, when applied to the subject embraced in it, as to give effect to all of its provisions. In doing so we must assume that the legislature had in view and understood the condition of the subject upon which they were legislating, and used apt words to signify their intentions. It is hardly possible in that view that the legislature in fixing a limit of one year for the construction of these railroads intended that that limit should embrace imaginary streets in farm lands, in which no company would be reasonably expected to construct and operate a horse railroad, nor on the other hand could it reasonably be maintained that the legislature intended to-grant to the defendants an absolute right to exercise exclusive control of a large number of streets and avenues in a populous city, for street railroad purposes, and by the terms of the grant to postpone the construction of any and all of said roads to an indefinite and remote period, depending upon the happening of a remote contingency, which might, or might not happen in the next half century. But the act itself has. clearly indicated the intention of the legislature. The first section provides in presentí for the construction of a railroad “ commencing at the present track at South-Sixth street, through Eighth street, to and across Broadway to Ross street, and double lines of railroad tracks through said Ross street and Bedford avenue to Fulton avenue.” This represents a line of complete-opened, graded, and paved streets. The act then proceeds, “ and whenever Nostrand or Rogers avenues, shall have been legally opened, graded and paved, to-extend the line of double tracks through Fulton, and either Nostrand or Rogers avenues, to the village of Flatbush. It will be seen that so far as the .route described above is through paved and graded streets, it is a grant in presentí, and when it refers to streets; *417 not opened, graded and paved, it is granted in futuro, one may be constructed at once, the other whenever a future event therein referred to occurs. The first presupposes an act capable of immediate performance, the other an extension of a similar act after the first has been performed. The word extended pre-supposes a previous structure from which the extension is made. The same phraseology is substantially used in the second line of road granted by the act of i860. It proposes a grant in presentí to Cypress avenue, and whenever, in futuro, Cypress avenue shall have been legally opened and graded, to extend a double or single track on said avenue. Here again the word extended is used, clearly signifying the legislative intent to provide for the construction of the tracks over the opened, graded and paved streets, before the erection of the extension. The third line of the route granted by this act refers to a portion of said city where the streets are not opened and graded, and the grant in that case is in futuro, whenever, etc. From the wording of this section it is quite apparent that the legislature intended that the grant upon the streets, which at the time of the passage of the act had been opened, graded and paved, should be acted upon at once, and completed within one year, or by October 1, 1861. r
This construction is in harmony with the object of the grant. The construction and operation of street railroads in populous cities has become an actual necessity to the public, and an object much sought after by capitalists for the investment of money ; and where a company accepts a grant of a franchise given from the State, for the construction of a railroad, the interest of the public requires that the road should be constructed, to subserve the purpose for which alone the State made the grant; and in construing the act making the grant, the court should consider the spirit and purpose of the act (People ex rel. 23rd street R. R. Co. v. Com *418 missioners of Taxes, 95 N. Y. 554). The manifest object of the legislature was to provide railroad facilities for the citizens of Brooklyn. That could only be accomplished by chartering companies and giving them the grants of way and franchise for construction and operating the same ; and if, after making the grant, the State is powerless to compel the exercise of the franchise, orto annul the grant, then a grant of this character would put it in the power of the grantee of the franchise to deprive the public of the very facilities the legislature intended to grant, as we have seen the defendant by the construction of 1,000 feet in any one street could effectually prevent any railroad from being built, and thus deprive the public of this means of travel. But it is insisted by the defendant that the grant in the act of i860 was only permissive and not mandatory, and that the defendant, therefore, may or may not construct and operate a railroad under this grant according to its volition. It is quite clear that the State could not have compelled the defendant to accept of this grant. But the case discloses that the defendant did accept the grant, and constructed and operated a railroad under it, and that it hás not abandoned the claim to the same, and is, as it alleges, now seeking to construct a portion of said road. It is true the words of the statute are 11 it shall be lawful ” but it cannot be contended that such words of permission can be appropriated by the defendant without assuming the obligations which are imposed by the act, if that which it may lawfully do is accepted. It is lawful for the defendant to accept the grant; but having accepted it, it would not be lawful for defendant to be guilty of a non-user of a corporate franchise in violation of the law upon that subject; having voluntarily accepted the ■privilege the defendant becomes at once amenable to the law giving such privileges and franchises, and for a -violation of that law must suffer the consequences.
*419 If I am right in my conclusion, the defendants, on assuming the grant, becomes obligated to enter upon the erection and maintainance and operation of a street railroad over and upon those streets and avenues in which the act conferred the right in presentí, and by the act were compelled to complete the same by October 1861 (§ 3 of chap. 461, laws of i860). But if it should be contended that as the defendant was organized under the general railroad act, and was therefore entitled to the limitations prescribed by that act (§ 47, chap. 140, of laws óf 1850), still the defendant cannot claim to have come within its provisions. Or if we test the defendant’s non-user by the common-law rule, it will be found that it has failed in its duty in that regard. “ The only remaining question is, can this failure of the defendant work a forfeiture of the franchise granted by. the act of i860 on the ground that that was an added right and franchise ? and if so can such forfeiture be adjudged and declared in this action. We have seen in People v. Bristol & Rensselaerville Turnpike Co. {supra), that when a particular franchise is added to a corporation subsequent to its first creation, such franchise may be forfeited and the residue remain.” Within this authority I think the defendant may forfeit the franchise granted by the act of i860, and retain unaffected its corporate franchise granted and acquired under its original charter.
Can such forfeiture be declared in an action by the attorney general? The prayer for relief in the complaint, is for judgment that the charter be vacated, or that the privileges and franchise granted by the act of i860 be vacated and annulled. The Code of Civil Procedure gives to the attorney general the right to bring an action against a corporation, first, to vacate its charter, and second, to annul its existence when any of the conditions mentioned in section 1798, exist.
It is true that the provisions of that section do not, *420 in express words, confer the authority to take from a corporation a part of its corporate franchises and property. But, as the right to bring an action to vacate the charter or annul its corporate existence exists, that power would seem to embrace within it the power to maintain an action to annul an added grant or franchise. The lesser power is included within the granter; and as this grant under the act of i860 is an added grant or franchise, created by an act by itself, and, as we have seen, capable of being annulled by itself, it would seem to be within the general scope of actions authorized to be prosecuted by the attorney general. But the right to forfeit the franchise, or any part of it, existed at common law, and the common law remedies by writ of quo warranto and scire facias, for the enforcement of such right, seem to have been superseded by an action prosecuted by the attorney general. The right remains the same under the Code as it existed by the Revised Statute, and as it existed substantially at common law; the method of enforcing the remedy is changed to the manner prescribed by the Code. Writs of scire facias and writs of quo warranto are abolished, and the relief formerly obtained by means of" either, may now be obtained by action (Code of Civil Procedure § 1983),. and as we have seen that judgment may be given, annulling the added franchise leaving the original charter to remain (4 Cow. R. 122, 23 Wend. 223, supra),. I am of opinion that plaintiff should have judgment of forfeiture, annulling all the grants and franchises, given to the defendant under the act of i860.
Benjamin F. Tracy and Jesse Johnson, appearing for the attorney general, for appellants.
*420 Judgment is therefore ordered in favor of the people-against the defendant annulling and setting aside all’ the rights, privileges, and franchise granted, or intended to be granted to the defendant by the act of i860. With costs to the plaintiff against the defendant.
*421 I. Defendant by accepting the privileges of the act of i860, thereby assumed to execute the purpose of the franchise (Citing Conrad v. Village of Ithaca, 16 N. Y. 158, 163; West v. Village of Brockport (referred to in note to the above decision); People v. Williamsburg Turnpike and B. Co., 47 N. Y. 592 ; Code Civ. Pro. § 1797; Denike v. N. Y. and R. Lime Co., 80 N. Y. 599 ; People v. Northern R. R. Co., 53 Barb. 98, 103; 42 N. Y. 229; Thomas v. Railroad Co., 101 U. S. 71, 84; Chicago Life Insurance Co. v. Needles, 113 Id. 580; Moore v. Brooklyn City R. R. Co., 108 N. Y. 104; People v. Kingston and Middleton Turnpike R. R. Co., 23 Wend. 204; High on Extraordinary Remedies, § 651; Morawetz on Corporations, § 642 ; Taylor's Law of Private Corporations, §460; People v. Dispensary and Hospital Society, 7 Lans, 304; Angell and Ames on Corporations, § 774 ; Potter's Law of Corporations, § 688 ; Commonwealth v. Commercial Bank, 28 Pa. St. 383; People v. Hillsdale & Chatham Turnpike Co., 23 Wend. 254; People v. Bristol & Rensselaerville Turnpike Co., Id. 221 ; People v. Albany and V. R. R. Co., 24 N. Y. 261; People v. Troy House Co., 44 Barb. 625 ; Matter of Jackson Marine Insurance Co., 4 Sandf. Ch. 559; Ward v. Sea Ins. Co., 7 Paige, 294 ; Conro v. Gray, 4 How Pr. 166; People v. Louisville, etc. R. Co., 120 Ill. 49; State v. Hartford, etc. R. Co., 29 Conn. 539.
II. The default was sufficient to cause a forfeiture of the franchise granted by the act of i860 (Citing People v. Northern R. R. Co., 42 N. Y. 207, 53 Barb. 93 ; People v. Albany and Vermont R. R. Co., 24 N. Y. 261, 269; People v. Louisville R. R. Co., 120 Ill. 49).
III. The act of i860 expressly provided that the defendant should construct its railroad on certain streets, the streets then opened and graded, before October 1861, and on the other streets when they should be opened (Citing People ex rel. Twenty-third street R. R. Co. v. Commissioners of Taxes, 95 N. Y. *422 554; Commonwealth v. Barber, 3 N. Eng. Rep. 901 ; Coffin v. Hussey, 12 Pick. 289; Commonwealth v. Jordan, 18 Id. 228 ; Endlich on Interpretation of Statutes, §§ 416, 256; Statz v. Hudson R. R. Co., 4 Abb. Ct. App. Dec. 267; Freethy v. Freethy, 42 Barb. 642; Hills v. Williams, 14 S. & R. 289 ; Smith v. Allen, 31 Ark. 270; Phillips v. Saunders, 7 Ill. (2 Gill) 119; Noe v. People, 39 Ill. 96; Jocelyn v. Barrett, 18 Ind. 128. A private act is presumed to have been drawn by the grantee, 2 Cow. 419; 91 U. S. 72; 2 Parsons on Contracts, pp. 637, 638 ; Fertilizing Co. v. Hyde Park, 97 U. S. 659; Hankins v. Mayor, 64 N. Y. 18; McManus v. Garven, 77 Id. 36; Matter of Water Coms. of Amsterdam, 96 Id. 351; N. Y. Asso. of Game v. Durham, 51 Super. Ct. 306; People v. Palmer, 109 N. Y. 110).
IV. Where the default in the failure to perform what the franchise has given is entire, there can be no-question whether it is sufficient to cause a forfeiture (Citing Commercial Bank of Natchez v. “ The State,” 6 Sm. and M. 617; People v. Supervisors of Otsego Co. 51 N. Y., 401 ; Phelps v. Hawley, 52 Id. 23 ; People v. Supervisors of Livingston Co., 68 N. Y. 114).
V. A compliance with the condition of a grant, after such a neglect or omission as created a cause of forfeiture, will be no defense to an action forfeiture-(Citing People v. Hinsdale and Chatham Turnpike R. Co., 23 Wend. 257; People v. Bristol and Rensselaerville Turnpike R. Co., Id. 243 ; People v. Northern R. R. Co., 53 Barb. 98 ; aff’d 42 N. Y. 217).
VI. The right of forfeiture is a common law right and the statutes are merely declaratory. (Citing 2 Bouviers Lazv Dictionary, p. 514, title scire facias; Angell and Ames on Corp., Chap. 21, § 731; High on Extraordhiary Remedies, 591 ; People ex rel. Hatzel v. Hall, 80 N. Y. 117; Verplank v. Mercantile Ins. Co., 1 Edw. Ch. 88; People v. Bristol and Rensselaerville Turnpike R. Co., 23 Wend. 243). At common knv the *423 judgment might run against the principal franchise, or a part (People v. Richardson, 4 Cow, 121 ; People v. Bristol and Rensselaerville Turnpike R. Co., 23 Wend, 221. pp. 236, 237, also note, p. 222).
Moore & Wallace, for defendants and respondents.
The court of appeals reversed the judgment of the general term, and affirmed the judgment of the special term on the opinion of the court below.