## THE PEOPLE OF THE STATE OF NEW YORK *vs.* THE TROY HOUSE COMPANY.

A voluntary association had been engaged in improving and adding to a building already erected, used for a hotel and stores, and erecting a new one story building for a bar and reading room. The defendant, claiming to be a corporation formed under the provisions of the act of April 5, 1853, "to authorize the formation of corporations for the erection of buildings," succeeded to the ownership of the property, continued and completed several of the improvements previously commenced, and made other extensive repairs, alterations, &c. and purchased, held, managed and leased the property for the purposes of a hotel and stores. *Held* that this was not a company formed for the erection of buildings, within the meaning of the statute.

The company authorized by the act of 1853 must be one "for the erection of buildings;" the fair meaning of which is, engaged or to be engaged in the *business* of erecting buildings—a building company or association.

The leading object of the company, under the act of 1853, must be to carry on the business of erecting buildings for themselves or others, and not to confine themselves, as the primary and sole purpose of their organization, to the erection or improvement of a single building upon a single property of their own, for its more convenient and lucrative development and use.

The true construction of the section of the revised statutes, which provides

that "if any corporation hereafter created by the legislature shall not organize and commence the transaction of its business within one year from the date of its incorporation, its corporate powers shall cease," is that the business there spoken of is such as the corporation may *lawfully* do under the act of incorporation; and if it has never done any business of that description, then the section applies.

Under sections 10 and 14 of the act of 1853 the capital stock of the corporation must be paid in, within two years from the time of the incorporation; and it must be paid in *money*, or the corporation will be dissolved.

It is not a compliance with these provisions of the statute for the stockholders to do something *equivalent* to the payment of money, by contributing *property* of equal value with the amount of money required to make up the capital stock.

APPEAL from a judgment of ouster and dissolution, against the defendant, entered upon a decision of Justice PECKHAM, on the trial of this cause before him without a jury. The defendant was incorporated in May, 1864, under the "Act to authorize the formation of corporations for the erection of buildings," passed April 5, 1853. (*Laws of 1853, ch.* 117.) The attorney general, on leave granted, instituted this action to obtain judgment of ouster and dissolution against the defendant, on three grounds : 1. On account of the exercise of privileges and franchises not granted. 2. On account of the non-exercise of privileges and franchises granted. 3. On account of the non-payment in money of the capital stock of said company, which was $75,000. The answer put in issue most of the material allegations in the complaint on which these allegations of forfeiture rested. After the evidence was introduced, the court made a finding of facts and of conclusions of law, which presents all the material facts and questions in the case. It is as follows, to wit :

1st. That on or about the 10th of May, 1855, George B. Warren and others, named in the complaint herein, signed, made, acknowledged and filed in the office of the clerk of Rensselaer county, a certificate of incorporation of "The Troy House Company," the defendant above named, and also filed a duplicate thereof in the office of the secretary of state for the state of New York, as stated in the complaint

herein. That a copy of said certificate is annexed to the complaint herein.

2d. That the defendant by reason thereof, claims to have become and to be a body politic and corporate under the name of "The Troy House Company," subject to the provisions and conditions of an act of the legislature entitled "An act to authorize the formation of corporations for the erection of buildings," passed April 5, 1853.

3d. That long prior to the filing of said certificate, the property in the city of Troy, known as the Troy House, and described in the answer, was held and owned by divers persons in common in an association known as "The Troy House Association," and had been used as a hotel. That prior to November 1, 1854, an action for the partition of said property between the owners thereof was pending in the supreme court, and that on said 2d November, 1854, an agreement was entered into between the parties signing the same, of which a copy was annexed. That the sale in partition therein contemplated, took place on the 2d day of May, 1855, and the premises were sold to George H. Cramer in trust for the persons signing said agreement, for the sum of $30,000. That said Cramer, on the 29th May, 1855, received a referee's deed for the said premises, in trust as aforesaid.

4th. That at the time of the organization of said corporation, the persons signing said agreement became its corporators, and took 1475 of its 1500 shares of stock, in proportion to their respective interests in said property, and such persons so held said stock, and were the only stockholders of said corporation at the time of the payments of stock hereinafter mentioned. That $13\frac{1}{3}$ per cent, was paid in cash on said 1475, shares, amounting to $9,832.99. That pursuant to resolutions of the defendant, passed May 26th, 1855, the defendant agreed to buy said Troy House property of its stockholders at $65,000, being $86\frac{2}{3}$ per cent upon its stock, and $86\frac{2}{3}$ per cent upon its stock was paid in by the conveyance and transfer of said property by said stockholders to the

defendant.    That the balance of the stock, being 25 shares, was afterwards issued to Jacobs & Caswell, in payment for work done by them.    That no other payments of the capital stock than as above stated, have ever been made.

5th.  That ever since the conveyance and transfer, the defendant has held the said real estate and property in the city of Troy, in the pleadings herein described, and known as the Troy House property, and has managed the same, and leased the same from time to time, for the purposes of a hotel and stores, in the city of Troy, county of Rensselaer and state of New York.

6th.  That on the 22d day of January, 1855, in pursuance of the agreement herein before referred to, certain improvements were commenced on the Troy House property, at the request of the said Cramer, by Jacobs & Caswell.    That the said Jacobs & Caswell built two additional stories on the south wing and rear of the old building, and a new one story building for a bar and reading room in the hollow square which the old building surrounded, and completed the exterior work thereof March 15, 1855, and were on the 24th of March, 1855, paid for the same.    That on the 19th day of March, 1855, said Jacobs & Caswell commenced inside repairs and plastering the new and old work, and completed the most thereof by June 14, 1855, and were paid therefor *by the defendant.*    That said Jacobs & Caswell afterwards did jobbing and repairing to the amount of $1500, and the same remaining unpaid on the 5th January, 1857, the said Jacobs & Caswell received from the defendant in payment thereof, $250 in cash, and the 25 shares of the defendant's stock yet untaken, at par, being $1250, and so received the same upon the statement of the defendant's president, that the rest of the defendant's stock had been taken and paid in.

7th.  That in addition to the improvements above specified, much re-arrangement, and many and thorough alterations and repairs were done upon said buildings by the defendant, and that most of the interior improvements were made after

May 10, 1855, and the same were not fully completed till January 1, 1856.

. 8th. That the improvements on the said property were paid for as follows, viz: $14,750, under said agreement of November 2, 1854, by the previous owners of the property who sold and conveyed to the defendant, and about $30,000 by the defendant. Said $30,000 was raised as follows: $20,000 by a mortgage by the defendant on the said Troy House property to the New York Life Insurance and Trust Company, and $9,832.99 by a call of the defendant on its stock.

9th. That the improvements were commenced and prosecuted until May 10, 1855, under the said agreement of November 2, 1854, herein before referred to.

10th. That the defendant has never engaged in the "erection of buildings," otherwise and except than as herein before stated.

11th. That the fair cash value of the Troy House property, at the time it was so transferred to the defendant, was about and not exceeding the sum of $50,000.

And as conclusions of law, he found as follows:

1st. That the defendant has used and is using the franchise or privilege of purchasing, holding and leasing the building and lot on which it is situated in the city of Troy, and described in the defendant's answer, and managing the same for the purposes of a hotel and stores without warrant, charter or grant, and should be ousted and excluded therefrom.

2d. That the defendant has never exercised the franchise of erecting buildings, within the meaning of the act of April 5, 1853, and has thereby incurred the penalty of forfeiture by non-user of any franchise obtained by virtue of the filing of its certificate under the said act, and should therefore be dissolved.

3d. That the capital stock of the defendant has never been paid in in money, as required by said act, except the

aforesaid sum of $9,832.99, whereby the defendant has incurred the penalty of forfeiture of any franchise it may have acquired by virtue of filing a certificate under the act of April 5, 1853, and should therefore be dissolved.

4th. That the plaintiff is entitled to judgment that the defendant be ousted and excluded from the privileges and franchises of holding, leasing, managing, &c. the real estate mentioned and described in the pleadings, and that the defendant be dissolved.

The defendant duly excepted to all the material findings and conclusions of the court below. Judgment having been entered on the foregoing decision, the defendant appealed therefrom to the general term.

On or about the 2d day of December, 1864, the defendant served upon the plaintiff a notice that it would move upon the trial of the cause to vacate the order of May 6, 1864, granting leave to bring this action (which notice forms part of this case) and thereupon, after the proofs had been closed, the defendant moved said court upon such proofs to vacate said order of May 6, 1864, or to modify the same so far that the plaintiffs should not thereby have leave of this court to bring or maintain this action on account of any forfeiture incurred by the defendant by any failure to pay in its capital stock in money, one half within one year, and the other half within two years after its organization. The court, after argument thereof by counsel on both sides, denied said motion and refused to vacate or modify said order, and thereto the defendant excepted and appealed to the general term.

*John B. Gale,* for the appellant.

*W. H. Peckham,* for the respondents.

*By the Court,* HOGEBOOM, J. The plaintiffs rely upon three grounds to maintain the judgment of ouster and dissolution granted in this action. 1. That the privileges and

The People *v.* Troy House Company.

franchises exercised by the defendant were never conferred upon it by law, and especially not by the act under which the defendant was incorporated.    2. That if those privileges and franchises were ever conferred they have been forfeited by non-user.    3. That the capital of the defendant has never been paid in in money, as required by the act of incorporation.

1. The defendant claims title to the privileges and franchises which it has exercised, under the provisions of the act entitled "An act to authorize the formation of corporations for the erection of buildings," passed April 5, 1853.    In section 2 of the articles of association it is declared that "The object for which this company is formed is the purchasing, holding, leasing and conveying of real and personal estate and the erection and management of buildings for the purposes of a hotel, and for stores and shops, in the city of Troy."    It is found by the court below that the defendant has never engaged in the erection of buildings, otherwise than as stated in the findings of the court, and which consist substantially in this: a former voluntary association had been engaged in improving and adding to a building already erected, used for a hotel and stores, and erecting a new one story building for a bar and reading room connected with such hotel.    The defendant, which succeeded to the ownership of the property formerly held by such voluntary association, continued and completed several of the improvements previously commenced, and made other extensive repairs, alterations and improvements upon the property formerly held by the voluntary associates, and also after their organization purchased, held managed and leased the property in question for the purposes of a hotel and stores, in the city of Troy.    The question is whether under these circumstances this was a company formed for the erection of buildings, within the meaning of the statute before quoted.    I am inclined to think it was not, for the following among other reasons: (1.) The company authorized by the act of 1853

must be one "for the erection of buildings;" the fair meaning of which is, engaged or to be engaged in the *business* of erecting buildings — a building company or association. It may be that they may erect buildings on their own property, though I think the leading object of the association must not be the mere purchase and improvement of real estate and a subordinate and incidental object the erection of buildings thereon as one of the modes of such improvement. This object was more directly designed to be accomplished by an act passed on the 10th of April, 1851, chapter 122, which authorizes the formation of an incorporated company "for the purpose of accumulating a fund for the purchase of real estate, the erection of buildings, or the making of other improvements on lands, or to pay off incumbrances thereon, or to aid its members in acquiring real estate, making improvements thereon, and removing incumbrances therefrom." (3 *N. Y. Statutes at Large*, 778.) The leading object of the company under the act of 1853 must be, I think, to carry on the business of erecting buildings for themselves or others, and not to confine themselves, as the primary and sole purpose of their organization, to the erection or improvement of a single building upon a single property of their own, for its more convenient and lucrative development and use.

It is true the 2d section of the act in question declares that "they shall by their corporate name be capable in law of purchasing, holding, leasing and conveying any real and personal estate whatever which may be *necessary* to enable the said company to carry on their *operations* named in such certificate;" but this is incidental to the main purpose of their organization, and comes under the head not of leading and primary objects of the incorporation but of means necessary or proper to carry into effect powers specifically granted.

(2.) The company in question, as I understand the pleadings of the court, has never erected any *buildings*, but at

most only a single building, and has not *erected,* but only *altered* and *improved,* that one ; has never devoted itself to the business of erecting buildings, but only to the object of making improvements upon a single building, and holding, managing and leasing the same as its property, under cover of corporate powers, for the purpose of accomplishing these latter objects with greater convenience and facility and less personal liability.

2. The complaint not only alleges that the privileges and franchises exercised by the defendant were never conferred upon it by law, but that it has never exercised the privileges or franchises actually conferred, to wit, those of erecting buildings. If the conclusion already intimated be correct, to wit, that the franchises exercised by the defendant were not such as were contemplated by the act incorporating companies of this description, then, inasmuch as the court below found that it exercised no other than those stated in its findings, it would seem to follow that there has been no user of the powers conferred. Perhaps this would bring the case within § 7, of the title of the revised statutes concerning the general powers, privileges and liabilities of corporations, (1 *N. Y. Statutes at Large,* 557,) which provides that "if any corporation hereafter created by the legislature shall not organize and commence the transaction of its business within one year from the ·date of its incorporation, its corporate powers shall cease." Perhaps the true construction of this section would refer the business here spoken of to such as it might *lawfully* do under the act of incorporation ; and if so, then, as it has never done any business of that description, the section would apply, and the decision of the court below would be sustainable on that ground. This point, however, is ·of minor consequence, as it is entirely dependent upon the conclusion arrived at under the first point. If that is not tenable, then this also falls to the ground.

There is another section, (1 *N. Y. Stat. at Large,* 560,) which provides that a corporation shall be deemed to have

surrendered its rights, privileges and franchises, and shall be dissolved, whenever it "shall for one year have suspended the ordinary business of such incorporation." I think this section proceeds upon the idea that it has once been in the exercise of its ordinary (authorized) business; for it can scarcely be said to have *suspended* such business unless it has at some time *exercised* it. Moreover there does not seem to be any allegation in the complaint pertinent to such a view of the case, and the decision made, probably proceeded upon the section previously quoted.

3. The remaining question arises under sections 10 and 14 of the act of 1853. Section 10 provides that "the capital stock so fixed and limited (by the articles of association) shall all be paid in, at least one half thereof within one year, and the remainder thereof within two years, from the incorporation of said company, *or such corporation shall be dissolved.*" Section 14 provides that "nothing but *money* shall be considered as payment of any part of the capital stock."

These are very plain provisions, and admit, it seems to me, of but one construction. The capital stock must be paid in within two years; and it must be paid *in money*. These provisions have not been complied with, and the statute with equal plainness declares the consequence; the corporation shall be dissolved.

I see no satisfactory answer which can be given to these provisions. We have heretofore held under the law of limited partnership which requires that the capital contributed by the special partner shall be *paid in cash*, that the statute was imperative, and must be *strictly obeyed*. (*Haviland* v. *Chace*, 39 *Barb*. 283. *Also MSS. opinion in same case.*) The principle of that case applies to this. The language is not ambiguous, and the clear mandate of the legislature must be followed. It is not enough to say that something *equivalent* to this has been done—that property of equal value with the prescribed amount of money has been contributed. This always raises the question whether the proposed substi-

tute for money is of equal value with the money actually required to make up the capital stock. In this case it does not appear to have been, though bad faith is not imputed. Whenever a substitute for money is tolerated, it is difficult to see why *any* such substitute which can come under the denomination of property may not be employed, and it necessarily leads to a troublesome examination to ascertain the true value of the proposed substitute ; and it leads also, very often, to a doubtful and unsatisfactory result. The statute has foreclosed any such device, or transaction. It intended to give to the creditors of such an incorporation such security as might result from the original contribution of the capital in cash—whatever might be done with it afterwards. Persons interested in the credit and solvency of the corporation, whether as creditors or stockholders, are entitled to this degree of protection, to wit, that the capital shall be originally paid in in money ; and I know of no authority for dispensing with this plain provision of the charter.

On this ground, if on no other, the decision of the court below can safely stand, and therefore, as it seems to me, its judgment should be *affirmed with costs.*

The case also comes here on appeal from the order allowing this action to stand in its present form, and refusing to confine its operation and effect to the question whether the privileges and franchises exercised were within the grant of power contained in the charter, or rather refusing to exclude from the issue the ground of forfeiture or dissolution arising out of the non-payment of the capital in cash. And it is further suggested that, independent of the appeal, this court may rightfully control, and should do so in this case, the proceedings so far as to restrict the grounds of forfeiture as above mentioned. I do not think this court should interfere on any of these grounds. It is doubtful whether the appeal comes within any of the recognized cases for such relief prescribed by law ; and whether it is not a case of discretion resting in the judge who granted the order, in a matter of

practice and pertaining to the mere conduct of the suit, and not in any degree to the merits. Whatever may be our right to interfere, either with or without an appeal, I do not think it should be exercised. If the plaintiffs are right, there are three grounds of forfeiture or of ouster on which the action is maintainable, and we are not, I think, allowed to say that the authorization of these proceedings contravenes any principle of equity or of public policy. The parties must be left to their legal rights and to such relief as is accessible to them by an appeal to the legislature, or by a reorganization of the corporation upon a more stable basis.

The order appealed from must be *affirmed*, and the motion for further relief *denied*, with $10 costs.

[ALBANY GENERAL TERM, December 4, 1865. *Hogeboom, Peckham* and *Ingalls*, Justices.]