The People of the State of New York, Appellant, *v.* The Broadway Railroad Company of Brooklyn, Respondent.

Words and phrases in a statute, conferring upon a corporation its franchises and special privileges, which are ambiguous or admit of different meanings, must receive that construction which is most favorable to the public.

Defendant, a street railroad company, organized in pursuance of an act passed in 1858 (Chap. 303, Laws of 1858), and which had constructed and was operating its road in the city of Brooklyn, was, by an amendment to said act, procured by it, passed in 1860 (Chap. 461, Laws of 1860), authorized to lay tracks for several distinct routes, some of which were beyond the city limits, but all of which were part of an entire railroad system, on certain streets, avenues and plank-roads specified, which had been at that time legally opened and graded; some of the routes were authorized to be "extended," and others to be laid through certain other streets "whenever they shall have been legally opened and graded" (§ 1). Defendant was required to "complete the tracks upon the said several streets and avenues or roads named" on or before October 1, 1861, "or as soon thereafter as the said streets and avenues within said city shall have been opened, graded and paved, and upon any planked road or roads whenever the consent of the plank-road companies shall have been obtained." In an action to have declared forfeited the franchises granted by said act of 1860, it appeared that on some of the routes defendant in that year laid a single line of track through some of the streets specified, which were then opened, graded and used as streets, and operated the same until in the year 1874, when it removed the tracks, and has not since maintained or operated a road therein, and for twelve years prior to the commencement of the action it had not maintained or operated a road upon any of the routes mentioned in said act, although most of the streets named had then been opened, graded and paved. Defendant claimed it was not bound to build its road on any one of the routes until all the streets upon it were opened and graded so that the road could be constructed on the whole route. *Held,* untenable; that it was the legislative intent, and under the act defendant was required to lay its tracks within the time specified upon such of the streets named as were opened and graded, and upon the other streets as soon as they were opened, graded and paved; that defendant could not accept the franchises and leave them in abeyance; that the fact that it would not have been profitable to build roads on the routes specified until each route was opened the whole length thereof was no excuse for failure to comply with the requirements of the act; that such failure was a good ground for forfeiture; and that the court had power to declare the franchises forfeited.

Also *held*, that under the requirement that defendant should build upon any plank-road whenever the consent of the plank-road company could be obtained, it was the duty of defendant to use reasonable diligence to obtain such consent; and, therefore, it was no answer that it did not appear that such consent had been obtained.

It was claimed by the defendant that, as by an act passed in 1867 (Chap. 905, Laws of 1867), it was prohibited from building its road on one of the avenues named, this was an answer to its default as to that avenue. *Held*, untenable, as at the time of the passing of said act defendant had been in default for over five years, and so there was good ground for forfeiture.

Also *held*, that defendant was not aided by the acts of 1875, 1879 or 1882 (Chap. 598, Laws of 1875; chap. 350, Laws of 1879; chap. 405, Laws of 1882), each of which extends for two years the time for the completion of the road of any railroad company which had been unable to construct its road within the time specified in its charter; that the act of 1882 did not apply to defendant, as by it it is provided it should not apply to any corporation which had already commenced the construction of its road; also that none of the acts applied, as it did not appear it was unable from any cause to construct the roads it was bound to construct.

Also *held*, that the extensions in the various acts were for terms of two years beyond the time previously limited, so that if they did apply to defendant their combined effect, at most, would be to extend the time for six years from October 1, 1861.

*People* v. *Broadway R. R. Co.* (56 Hun, 45), reversed.

(Argued February 25, 1891; decided March 10, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 4, 1890, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was commenced in May, 1888, to have declared forfeited for non-user the franchises obtained by the defendant under chapter 461 of the Laws of 1860, in certain streets of the city of Brooklyn.

Judgment was rendered by the Special Term forfeiting the franchises as prayed in the complaint. From that judgment the defendant appealed to the General Term where the judgment was reversed, and an absolute judgment was given for the defendant dismissing the complaint.

The material facts sufficiently appear in the opinion.

*Benjaman F. Tracy* and *Jesse Johnson* for appellant.   The answer admits, in the broadest and most complete form, that the defendant accepted the act of 1860 and the franchises thereby granted, and that it also accepted and assumed the obligations implied by the acceptance of that franchise. Wherever a privilege, charter or franchise is granted and accepted, an obligation to execute the purpose of the franchise is thereby imposed and assumed. (*Conrad* v. *Trustees, etc.*, 16 N. Y. 158, 163, 164; *People* v. *W. T. & B. Co.*, 47 id. 592; Code. Civ. Pro. § 1797; *Denike* v. *N. Y. & E. L. Co.*, 80 N. Y. 599; *People* v. *A. & V. R. R. Co.*, 24 id. 261, 267; *People* v. *N. R. R. Co.*, 53 Barb. 98, 103, 122; 42 N.Y. 229; *Thomas* v. *R. R. Co.*, 101 U. S. 84; *C. L. Ins. Co.* v. *Needles*, 113 id. 580; *Moore* v. *B. C. R. R. Co.*, 108 N. Y. 104; *People* v. *K. & M. T. R. R. Co.*, 23 Wend. 204; Angell & Ames on Corp. § 774; Potter on Corp. § 688; *Commonwealth* v. *Commercial Bank*, 28 Penn. St. 383, 389; *People* v. *H. & C. T. Co.*, 23 Wend. 254; *People* v. *B. & R. T. Co.*, Id. 221, 232; *People* v. *T. H. Co.*, 44 Barb. 625; *In re J. M. Ins. Co.*, 4 Sandf. Ch. 559; *Ward* v. *S. Ins. Co.*, 7 Paige, 294; *Conro* v. *Gray*, 4 How. Pr. 166; *People* v. *L. R. Co.*, 120 Ill. 49; *State* v. *H., etc., R. Co.*, 29 Conn. 539.)   The company did build one complete route and operated a railroad there from about 1861 to 1876, and then discontinued operations and removed and destroyed the road.   That default alone was sufficient to cause a forfeiture of the franchise granted by the act of 1860. (*People* v. *N. R. R. Co.*, 42 N. Y. 207, 229; 53 Barb. 98, 102, 103; *People* v. *A. & V. R. R. Co.*, 24 N. Y. 269; *People* v. *L. R. Co.*, 120 Ill. 49.)   The act of 1860 expressly provided that the defendant should construct its railroad on certain streets — the streets then opened and graded — before October, 1861, and on the other streets and avenues whenever those streets and avenues should be respectively opened, graded and paved.   (*People ex rel.* v. *Comrs. of Taxes*, 95 N. Y. 554; *McIntyre* v. *Ingraham*, 35 Miss. 25; *Freethy* v. *Freethy*, 42 Barb. 642; *Bestor* v. *Powell*, 7 Ill. 119; *Noe* v. *People*, 39 id. 96; *Jocelyn* v. *Barrett*, 18 Ind. 128; Endlich on Stat.

§§ 354, 355 ; 2 Cow. 419 ; 91 U. S. 72 ; 2 Pars. on Cont. 637, 638 ; *F. Co.* v. *Hyde Park*, 97 U. S. 659.) The time limita tions as to completing this railroad, contained in its granting act, do not abrogate and supersede the provisions as to completing contained in the General Railroad Act. (*Hawkins* v. *Mayor, etc.*, 64 N. Y. 18 ; Laws of 1858, chap. 303 ; Laws of 1850, chap. 140, § 47 ; *McManus* v. *Gaven*, 77 N. Y. 36 ; *In re Water Comrs. of Amsterdam*, 96 id. 351 ; *Game* v. *Durham*, 18 J. & S. 306 ; *People* v. *Palmer*, 109 N. Y. 110.) The defendant, however, insists that it is not every neglect of legal requirements that is the cause for the forfeiture of a fran chise. Passing the question whether or not the character of the omission does not present a question of discretion for the consideration of the attorney-general rather than the courts, we content ourselves with the proposition that where the default is the entire failure to do that for the performance of which the franchise was given, no such rule applies. (*Commercial Bank* v. *State*, 6 Sm. & M. 617.) A compliance with the condition of the grant after such a neglect or omission as created a cause of forfeiture, is not a defense in an action for forfeiture. (*People* v. *H. & C. T. R. Co.*, 23 Wend. 257 ; *Ward* v. *S. Ins. Co.*, 7 Paige, 299 ; *People* v. *B. & R. T. R. Co.*, 23 Wend. 243 ; *People* v. *N. R. Co.*, 53 Barb. 98.) As the obligation to build existed at common law, so did the right of forfeiture exist at common law, and the writs of *quo warranto* and in the nature of *quo warranto*, and of *scire facias*, were the old and appropriate common-law methods for enforcing the penalty of such a default. (2 Bouvier's Law Dictionary, 514, title Scire Facias ; Angell & Ames on Corp. chap. 21, §§ 731 ; High on Ex. Rem. 591 ; *People ex rel.* v. *Hall*, 80 N. Y. 117.)

*George W. Wingate* and *Thomas S. Moore* for respondent. The intention of the legislature with reference to the grant of this franchise must be gathered by regarding it as a whole with reference to the purpose which it was designed to effect. If, therefore, any part of the language of the act is inconsistent

with this general purpose, it must be construed as limited and explained by the scheme considered as a whole. (*Holmes* v. *Carlly*, 31 N. Y. 290 ; *Chase* v. *N. Y. C. R. R. Co.*, 26 id. 523 ; Potter's Dwarris on Stat. 180.) The General Term was correct in its decision that the act constituted a grant *in presenti* of all the franchises contained in it, and that these rights continued as to each branch until all the streets composing the whole of such branch were opened, graded and paved. (*Jackson* v. *Topping*, 1 Wend. 388 ; *Hasbrook* v. *Paddock*, 1 Barb. 635 ; *Linden* v. *Hepburn*, 3 Sandf. 368.) The General Term was clearly correct in overruling the decision of the Special Term that the act made it obligatory upon the company to extend its tracks piecemeal into each of the streets constituting these different routes, and which streets were not opened, graded and paved in 1860, as portions of them were, from time to time, so opened, graded and paved, under penalty of forfeiting all the franchises created by the act. (*In re U. E. R. Co.*, 113 N. Y. 275 ; *N. Y. & N. H. R. R. Co.* v. *Kip*, 46 id. 542, 547.) The Special Term was also properly held by the General Term to be in error in finding that it was the duty of the defendant to construct the first branch through Eighth and Ross streets, and Bedford avenue to Fulton street, before October 1, 1861. (Laws of 1867, chap. 905 ; *In re M. T. Co.*, 111 N. Y. 603 ; Laws of 1875, chap. 598.) The General Term was also correct in its decision that the Special Term was in error in holding that the defendant had violated the franchise vested in it by the act of 1860 in taking up the section of the road which it constructed through a part of Johnson avenue and Morrell street. (*Commonwealth* v. *P. R. R. Co.*, 78 Mass. 180.) Even if there had been a technical violation of the statute as to one of these franchises the judgment of forfeiture should not have been rendered as a matter of discretion, as it is not just. (Code Civ. Pro. §§ 1798, 1799, 1801 ; Wood on Railroads, § 499 ; *Munn* v. *P. Co.*, 8 Pet. 281 ; High on Ex. Rem. § 649 ; *State* v. *Com. Bank*, 10 Ohio, 535 ; *State* v. *Farmer's College*, 32 id. 487.) The lapse of time since the alleged breach of duty makes it inequitable that they should

be considered as reasons for forfeiting the Central avenue route. (High on Ex. Rem. § 659.) Any cause of forfeiture which may have arisen prior to 1873 was waived by chapter 788 of the Laws of 1873. (*N. Y. E. R. R. Co.*, 70 N. Y. 338.) Any defalt of the defendant in failing to construct its road has been cured by express statute. (Laws of 1875, chap. 598; Laws of 1879, chap. 350; Laws of 1882, chap. 405.)

EARL, J. The defendant was organized in pursuance of the act, chapter 303 of the Laws of 1858, under the General Railroad Act, and it was required to complete its road through the streets mentioned in the first section of the act within eighteen months from the passage of the act. It constructed its road within the time mentioned, upon the route specified, a distance of about four miles and a half. In April, 1860, the act, chapter 461 of the Laws of that year was passed, section 1 of which is as follows:

"It shall be lawful for the Broadway Railroad Company of Brooklyn, organized by virtue of the act hereby amended, to lay down a single line of railroad track, commencing at their present track at South Sixth street, through Eighth street, to and across Broadway to Ross street, and double line of rail road tracks through said Ross street and Bedford avenue to Fulton avenue; and whenever Nostrand or Rogers avenue shall have been legally opened, graded and paved, to extend the line of double tracks through Fulton and either Nostrand or Rogers avenue to the village of Flatbush; also, to lay a single line of railroad track, commencing at their present track on South Sixth street, through Eleventh street to south Fifth street, through South Fifth street to Montrose avenue, through said avenue to Morrell street, through Morrell to Johnson street, through Johnson street to intersect the track of said company on Broadway, and a double line of tracks from Morrell street through Johnson to its intersection with the Cypress Hills plank-road, and through and over said plank-road to Cypress avenue; and whenever Cypress avenue shall have been legally opened and graded, to extend a double or single

track on said avenue to Cypress Hills cemetery. Also, when-
ever White, Bogart or Thames streets and Central or Knicker-
bocker avenue shall have been legally opened and graded, the
said company are authorized to lay a double or single line of
railroad track through and over the same to the city line, from
the intersection of either White or Bogart street with the
Cypress Hills plank-road and the track hereinbefore authorized
to be laid on said plank-road, with the privilege to lay tracks
for the necessary turnouts; which tracks, when laid, shall be
maintained and operated by said company in conformity to
the several provisions of the act hereby amended relative
thereto."

And section 3 of the act is as follows:

" Said railroad company shall complete the tracks upon the
said several streets and avenues or roads named in the first
section of this act on or before the first day of October,
eighteen hundred and sixty-one, or as soon thereafter as the
said streeets and avenues within said city shall have been
opened, graded and paved, and upon any plank-road or roads,
whenever the consent of the plank-road companies shall have
been obtained."

The defendant accepted the act and the franchises and
rights thereby given, and assumed the obligations thereby
imposed. At the time of the passage of the act of 1860
Eleventh street from South Sixth street to South Fifth street,
South Fifth street from Eleventh street to Montrose avenue,
Montrose avenue from South Fifth street to Morrell street,
Morrell street from Montrose avenue to Johnson street, and
Johnson street from Morrell street to Broadway, were city
streets, opened, graded, and paved, and traveled and in use as
such. The aggregate length of such streets was about one
mile and a half. In the fall of 1860, the defendant constructed
a single line of railroad tracks through such streets and began
to operate the same with cars on the 1st day of March, 1861;
and so it continued until in the year 1876, when it removed
its tracks from those streets and it has never since maintained
or operated any road therein. In 1887 the defendant com-

menced the construction of its road on Central avenue, and expended in so doing upwards of $12,000, and laid upwards of 3,000 feet of tracks, when it was stopped by adverse litigation; but upon the tracks thus laid it has never operated any cars.

It thus appears that during the twelve years prior to the commencement of this action the defendant did not maintain or operate a railroad upon any of the routes mentioned in the act of 1860, and that during twenty-eight years prior to the commencement of this action it did not attempt to build or maintain any railroad upon any of the routes mentioned in that act except as above mentioned.

The claim on the part of the plaintiff is that for the non-user of the franchises conferred upon the defendant by the act of 1860, and for its neglect to perform the obligations assumed by it under that act, it forfeited all its rights and franchises under the act; and so it was held at the Special Term.

The defendant claims that it was not bound to build its road upon any one of the routes mentioned in the act until the streets upon such route were opened, graded and paved so that the road could be constructed upon the whole route and, therefore, that it had not forfeited any of its franchises; and so the General Term held, and reversed the judgment of the Special Term.

The General and Special Terms differed as to the construction of the act of 1860; and as the real merits of the controversy between the parties depend upon the construction of that act, we will, in the main, confine our attention to that.

As the judgment of the General Term does not state that the reversal was upon the facts, we must presume it to have been solely upon the law, and not upon the facts, or in the exercise of any discretion. (Code, § 1338.)

The act of 1860 was obtained by the defendant, or in its interest. It may be assumed that the language therein contained was the language chosen by it to define the rights and franchises which it sought by the act. As the act conveyed to it franchises and special privileges, its language must be con-

strued most favorably to the people and all reasonable doubts in construction must be solved against the defendant. Words and phrases which are ambiguous, or admit of different meanings are to receive, in such cases, that construction which is most favorable to the public. (*Barrett* v. *Stockton and Darlington R. Co.,* 2 M. & G. 134; *Stourbridge Canal* v. *Wheeley,* 2 B. & Ad. 792; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659; *Sprague* v. *Birdsall,* 2 Cowen, 419; *Auburn & Cato Pank-Road Co.* v. *Douglass,* 9 N. Y. 444; *People* v. *N. Y. & S. I. F. Co.,* 68 id. 71; *Langdon* v. *Mayor, etc.,* 93 id. 129.) The act must now be construed as the courts would have construed it if it had come in question soon after its passage. The defendant cannot claim a liberal or enlarged construction of the act to shield itself against a forfeiture alleged to have been voluntarily incurred. It would be quite a paradox to hold that it could enlarge its franchises, or extend its rights by exposing them to condemnation for non-user. The language of the act must, under all circumstances and in all proceedings and actions, receive the same construction and have the same scope and meaning. But, while the act is to be strictly construed in such a case, the conduct under the act which is claimed to constitute the forfeiture of corporate rights and franchises, is to have a charitable and liberal construction, like any conduct tending to penal consequences. In considering such conduct courts will lean against forfeitures, and the doctrine that courts are reluctant to declare and enforce forfeitures can have no other application to such a case as this.

A few other facts must now be stated. Not only were the streets above mentioned upon which the railroad was built in 1860 opened, paved and graded, but in that year Eighth street, from South Sixth street to and across Broadway to Ross street, and Ross street to Bedford avenue, and Bedford avenue to Fulton avenue were opened, graded and paved, and the aggregate length of these streets was about two miles. Fulton avenue, from Bedford avenue to Nostrand avenue was opened, graded and paved prior to 1855; Nostrand avenue, from Fulton avenue to the city line and the village of Flatbush was opened

on or prior to September, 1859, and graded and paved from Fulton street to Butler street prior to the year 1867, and from Butler street to the city line in 1869. Rogers avenue was opened in 1870, and graded and curbed from Dean street to the city line in 1875, and graded and paved from Bergen street to Dean street in 1886. The remainder of Rogers avenue is now a part of Bedford avenue, which was opened, graded and paved about the year 1870. Johnson street to its intersection with Cypress Hills plank-road, and the plank-road to Cypress avenue, were opened, making a good dirt-road from Morrell street to the avenue, a portion of which was macadamized, and the whole of which is now known as Johnson avenue and used as a public street or highway, although it has never been opened, graded and paved under that name as one of the streets of the city. Cypress avenue, from its intersection with Johnson avenue to the city line, is a good country dirt-road, but it has not been paved. Bogart street to Thames street was not paved until about the year 1887. Thames street from Bogart street to opposite and adjacent to Knickerbocker avenue, and White street from Johnson avenue (formerly Cyprus Hill plank-road) to a point adjacent to Central avenue, have not been opened, graded or paved. Central avenue extends from Flushing avenue to the city line, a distance of about 9,900 feet. It was opened, in the year 1871, a distance of about 9,100 feet, and was graded and paved a distance of 6,000 feet on or prior to March 29, 1875, and a distance of 260 feet further in 1885. The remainder thereof was never graded or paved, and a portion thereof, which is now graded or paved, is about 3,600 feet in length. Knickerbocker avenue extends from Flushing avenue to the city line, a distance of about 9,200 feet. It was opened from Myrtle street to Greene avenue, a distance of about 2,000 feet, on or prior to November 18, 1872. Between Flushing avenue and the city line it has been graded and paved for a distance of about 3,600 feet; on about seven or eight hundred feet of that portion of the avenue there is a dirt-road which is used as a street, and on which there are some houses; the remainder of such avenue is in fields, entirely unimproved.

The defendant, having accepted the law of 1860, was bound to act under it. It could not accept the franchises given to it and then leave them in abeyance. They are supposed to have been given, not exclusively for the benefit of the defendant, but also in the interests of the public. It cannot be supposed that the legislature meant to give them without imposing obligations upon the defendant to build its roads until certain streets running out into the country should, in the distant future, be opened, graded and paved. Why was this act passed in 1860, if it was not intended or supposed that anything was to be done under it for twenty-five or fifty years? Can it be supposed that the legislature meant to confer these franchises upon the defendant, leaving it optional with it whether it would build its roads in one or fifty years. Such legislation would be against public policy, and such a legislative intent cannot be presumed. It must be supposed that the defendant applied for the franchises and that the legislature granted them intending that they should be used, at least to some extent, and, so far as practicable, in the near future. Why then did the defendant not at once construct the first route mentioned in the act, from South Sixth street to Fulton avenue? The streets on that route were opened, graded and paved and no reason can be perceived why the road there should not have been built simply because Nostrand or Rogers avenues had not been opened, graded and paved. It was the plain intent that the road upon that route should be presently built, and that when Nostrand and Rogers avenues should have been legally opened the road thus built should be extended to the village of Flatbush. It cannot be properly said that a road is "extended," unless it is then and there existing to be extended. The very language implies that the road was to be built, and then, after the opening of the avenues mentioned, extended.

It was the manifest intention of the act that a road should be built upon the second route mentioned therein, to wit: through Eleventh street around to Broadway, and a double line of tracks from Morrill street to the Cypress Hills plank-road, and through and over the plank-road to Cypress avenue.

That was a road also to be extended when Cypress avenue had been legally opened and graded. But its construction was not to be delayed until that event happened. The streets on a large portion of that route were actually opened, graded and paved, and the plank-road was there, an open highway, upon which, by its consent, a railroad could be built. It is said in answer to this that it was not shown that the defendant had the consent of the plank-road company. But it was its duty to use reasonable efforts and due diligence to obtain that consent, as it was its duty to use reasonable efforts and due diligence to build its road upon the route mentioned. If it had shown that it could not procure the consent of the plank-road company, that would have been a reasonable excuse for not building its road thereon; but no such proof was given or attempted, and, therefore, the fact that it was not shown that it had procured the consent of the plank-road company is no answer to the claim that it was its duty to build its road upon that route. But for several years before the commencement of this action the plank-road had disappeared and no tolls were there taken, and it was not necessary, therefore, for the defendant to procure its consent. The legislative authority was all that was needed for the construction of its road upon that route. Therefore, it was in default for not building its road upon that route.

Whenever White, Bogart or Thames streets, and Central or Knickerbocker avenue should have been legally opened and graded the company was authorized to lay a single or double line of railroad tracks through and over the same to the city line. But as these streets were not opened or graded it is quite clear that the defendant was not bound to build its road upon that route. But all these routes were part of an entire railway system. They were really branches of the Broadway road, the trunk line of the defendant. The third route above mentioned was evidently intended to be operated in connection with a portion of the second route mentioned, and the cars thereon were expected to reach Broadway and other parts of the city over that route. If that route (the third) had been the only one upon which the defendant was authorized to build its road

by the act of 1860, the condition of things existing would have been an answer to any claim that it had forfeited its franchise to build its road there. But when it has utterly failed upon other parts of the system connected with it, and has forfeited its rights and franchises upon them, then it must be deemed also to have forfeited its franchise and rights upon that route. It would be contrary to the manifest intention of the legislature that the defendant should fail and refuse to build and operate railroads upon all the other routes, and yet retain the right to build and operate a road upon that route. Its franchises upon that must fall with the franchises upon all the other routes.

So if we look at section 1 of the act of 1860 alone we find certain routes upon which roads could be presently built, and certain routes upon which roads were to be built when streets had been opened, graded and paved. Upon the former routes the defendant was bound by the terms of that section, standing alone, to build roads within a reasonable time. Upon the latter routes it was bound to build roads when the conditions existed which are referred to in the section.

But the defendant relies upon section 3 of the act, and claims that that limits the times when it was bound to exercise its franchises and build and complete its roads, and the proper construction of that section is the main question in this case. The language of that section leaves no doubt that the legislature intended that the tracks upon some of the streets and avenues should be laid before the 1st day of October, 1861, and effect should, if possible, be given to that intention. We think it was the intention of the legislature, by the first clause of the section, to provide that roads upon the portions of the routes which we have above mentioned, where the streets were opened and graded, and some of them also paved, and more or less built upon, should be at once constructed and completed by the time mentioned, and the other clause, providing for the construction of roads upon streets " as soon as the said streets and avenues shall have been opened, graded and paved," has reference to streets which were not then opened, graded and paved which are mentioned in the first section, to wit: Cypress,

Nostrand, Rogers, Central and Knickerbocker avenues, and the small streets connected with them.    These two clauses of section 3 should be read distributively.    The first clause should be applied to the streets above specified, upon which roads could be presently built, and the second clause should be applied to the other streets mentioned.    The familiar rule of construction embodied in the latin phrase "*reddendo singula singulis*," is peculiarly applicable to such a section as this. (Endlich on Interpretation of Statutes, §§ 256, 416; *Staats* v. *Hudson River R. R. Co.*, 4 Abb. Ct. App. Dec. 267; *Freethy* v. *Freethy*, 42 Barb. 642; *Coffin* v. *Hussey*, 12 Pick. 289; *Commonwealth* v. *Jordan*, 18 id. 228; *McIntyre* v. *Ingraham*, 35 Miss. 25.)    It cannot be supposed that the legislature intended to give the defendant, by the language used, an option to build its roads at any time it chose to, absolutely binding it to build them only when all the streets and avenues upon any one of the routes should be opened, graded and paved.

The argument on the part of the plaintiff to show that the claim of the defendant, that it was not bound to build upon any route until it was entirely "opened, graded and paved" is untenable, finds some support in the provision in this section that the defendant should build upon any plank-road whenever the consent of the plank-road company could be obtained. There was no other limit to the time of building its road upon that route, and it was bound, as we have before said, to use reasonable diligence to obtain such consent, without unnecessary delay.

It is said, on behalf of the defendant, that it would not have been profitable to build roads upon these various routes until each route was opened to the final termination thereof, as provided in section 1.    But even if it were absolutely certain that the defendant could have made no profit by building the roads to the extent which we have above indicated, yet that is no answer to the proposition that it is the duty of the defendant to build them.    It applied for this act and accepted the franchises, and thus took upon itself the obligation and burden to exercise the franchises for the public benefit.    If these routes

could not presently be made profitable for railroad purposes, it should not have applied for the act; or the act having been passed, it should not have accepted the franchises. It was not bound to accept them. It may have been supposed and expected at the time that the building of these roads would stimulate the growth of the city in those parts, and thus that a road, unprofitable at first, would soon become, by the very facilities which it furnished, a profitable enterprise and investment.

It is said, on behalf of the defendants, that by the act chapter 905 of the Laws of 1867, it was absolutely prohibited from building its railroad upon Bedford avenue, and that such prohibition is an answer to its default in reference to that avenue. But at the time of the passage of that act, it had been in default for upwards of five years, and that default was a cause of forfeiture. That route, however, is not now very important. If it is true, as said by the defendant, that the provisions of the last-named act prevent the building of the road, then a judgment forfeiting any franchise it had there can do it no harm. The scope of that act is not very certain and does not extend to the whole route, and, therefore, it was quite proper that that route should be included in the condemnation visited upon the defendant by the judgment of the Special Term.

By the act, chapter 598 of the Laws of 1875, it was enacted that any railroad company which had been unable, from any cause, to construct its railroad within the period specified in its charter should have its time for construction extended for two years, and that "failure by any railroad company to construct its railroads heretofore, shall not cause a forfeiture of its corporate powers," and by chapter 350 of the Laws of 1879 a further extension of two years was given in substantially the same language as was also given by the act chapter 405 of the Laws of 1882; but in the second section of the latter act it was provided that the provisions of the act should not apply to any corporation or company that had already commenced the construction of its road. The latter act, therefore, clearly did not apply to this defendant, for it had long before constructed its main line, and had also commenced the construction of the

lines specified in the act of 1860, which it subsequently abandoned.

But these acts do not apply to this defendant for another reason. It does not appear that it was unable from any cause to construct roads, which we hold it was bound to construct under the act of 1860. These acts were not passed to aid corporations which willfully and intentionally omitted to construct their roads, but to aid such corporations as were unable from some cause to construct them. Nor was the act of 1875 intended for a corporation which, at the time of its passage, was in default for not building its road within the time limited in its charter. It expressly applied to corporations which may have been unable, from any cause, to construct their roads within the times limited in their charter, or articles of association; and the extension was for a further term of two years beyond the time thus limited, and not an extension of two years from the time of the passage of the act. The further extensions in the subsequent acts were simply for a further term of two years beyond the times theretofore limited. So that if these three acts could be held to apply to the defendant their combined effect at most, would be to extend the time for the construction of its roads for six years from the first day of October, 1861.

But even if we were to hold that these extensions applied to this company so that it was not in default until two years after the passage of the act of 1882, then for several years thereafter without any reason whatever, so far as appears in this record, it had omitted to exercise its franchises and was liable to the condemnation visited upon it by the judgment of the Special Term.

The power of the court to declare the franchises of the defendant forfeited for non-user is undoubted. (Code of Civil Procedure, § 1799; *People* v. *Turnpike Co.*, 23 Wend. 204; *People* v. *Troy House Co.*, 44 Barb. 625; *People* v. *Railroad Co.*, 53 id. 98; *Matter of Jackson M. Ins. Co.*, 4 Sandf. Ch. 559; *People* v. *Dispensary Society*, 7 Lansing, 304; *Ward* v. *Insurance Co.*, 7 Paige, 294; *Conrad* v. *Trustees of Ithaca*, 16 N. Y. 158; *People* v. *Albany, etc., R. R. Co.*, 24 id. 261;

*Denike* v. *N. Y. & R. L. C. Co.*, 80 id. 599; *Moore* v. *Brooklyn City R. R. Co.*, 108 id. 104; *State* v. *Hartford & N. H. R. R. Co.*, 29 Conn. 539; *People ex rel. Walker* v. *Louisville, etc., R. R. Co.*, 120 Ill. 49; *Thomas* v. *Railroad Co.*, 101 U. S. 84; *Chicago Life Ins. Co.* v. *Needles*, 113 id. 580.)

This defendant should not stand in the streets of Brooklyn claiming franchises which for many years it refused to use, and thus bar out other railroads which might be constructed for public convenience and accommodation. If these franchises are of no value it is not harmed by the judgment of the Special Term. If they are valuable and of growing worth it should have discharged its duty to the public by using them.

We are, therefore, of opinion that the judgment of the General Term should be reversed and that of the Special Term affirmed, with costs.

All concur, except O'BRIEN, J., taking no part.

Judgment reversed.