THE ATLANTIC AVENUE RAILROAD COMPANY, Appellant, v. | 134  375 |
Tom L. Johnson et al., Respondents.                              | 159  239 |

Plaintiff was the owner of a street railroad in the city of B., and also
the franchise and right to extend the road upon other streets, upon
obtaining consent of the local authorities and property owners. On
April 1, 1886, the parties entered into a contract by which, "in consid-
eration of the mutual covenants and agreements" therein contained,
plaintiff leased to the defendants the right to use the existing road and
the right to construct and operate the extension; it agreed to obtain the
necessary consents, and, in case it should fail to do so within sixty days
and should give notice to that effect to defendants, it was provided that
at the option of the latter the lease and agreement should cease or con-
tinue operative. Defendants agreed to have a specified portion of the
extension completed on or before November 15, 1881, and the residue
at times specified, unless delayed by legal proceedings; and to pay as
rental a percentage on the gross receipts, commencing October 1, 1860;
they stipulating that the annual rental should be not less than $15,000.
Defendants took possession of the completed road; plaintiff did not
procure the requisite consents until in October, 1886, when defendants
began the construction of the extension, but were restrained by order
of the court on the ground that the consent of another street railroad
to laying the road on one of the streets, which was an important part
of the extension had not been obtained. This consent was never obtained,
and a company to whom defendants had assigned the lease gave plain-
tiff notice that it elected to hold the contract broken because of non
performance, and that it was ready to surrender the property on being
reimbursed for the expenditures. In an action to recover the guaranteed
rental, *held*, that the lease was inoperative as a present demise of the
extension not then built and could not be effective with respect to the
right to create such property until plaintiff procured the requisite con-
sents; that the guaranty, therefore, was dependent upon the perform-
ance of the conditions precedent which were necessary to enable
defendants to complete the extension, and so it never became operative.
*It seems* that if the fixed amount of rent had been guaranteed from the
beginning of the term, defendants could not have defended, but their
remedy would have been to counter-claim damages.
The company which procured the injunction restraining the construction
of the extension was, after the trial of this action, adjudged to have
forfeited its charter. Plaintiff claimed, on appeal, that said company
was a wrongdoer in opposing the extension, and so, that its covenant
did not require it to overcome such resistance. *Held*, untenable; that
the court could not go outside the record to reverse the judgment; also
that until the judgment of forfeiture was obtained said company had
the right to oppose the extension.
(Argued June 6, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 18, 1890, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought to recover rent upon an alleged lease by the plaintiff to the defendants, executed April 6, 1886, of the right to use and operate a street railroad in the city of Brooklyn, then already constructed from Fulton Ferry to Park and Vanderbilt avenues, and also the plaintiff's franchises and rights to construct, maintain and operate an extension of the existing railroad through certain other streets, including Central avenue to the Evergreens Cemetery. The answer was non-performance by the plaintiff of the condition precedent to the accruing of the rent sued for.

The plaintiff had, in addition to its existing railroad, franchises under which, with the consent of the local authorities and property owners, it could make this extension. The defendants desired to operate a cable railroad upon the constructed road and to use the plaintiff's franchises to create the extension and operate the whole as a cable road. The instrument of April, 1886, is both a lease and an agreement. It recites that the parties, " in consideration of the mutual covenants and agreements herein contained, and by each of said parties to be observed and performed, have agreed and by these presents do mutually agree as follows."

By the first clause the plaintiff does "grant, demise and to farm let" to the defendants their successors and assigns for and during the term of its corporate existence "all the franchises and rights of the party of the first part to construct, maintain, and operate a railroad in the city of Brooklyn, commencing at Park and Washington avenues," describing the route of the proposed extension; "also the right to use jointly with the party of the first part the present railroad tracks, franchises and rights, from Washington avenue to Fulton Ferry," and then describing the existing railroad, together with other rights and property not here necessary to mention.

By the second clause, the plaintiff agreed "to obtain at its own proper cost and expense all necessary consents, including the consent of the local authorities of the city of Brooklyn to the construction and operation of a cable road * * * so as to allow the work of the second party to proceed without hindrance. * * * But in case the party of the first part shall be unable to procure the requisite consent for the construction of a cable road within sixty days from the execution of this agreement, and shall give notice of such failure in writing to the party of the second part this lease and agreement shall, at the option of the said party of the second part cease and determine, or the party of the second part shall have the right to continue said agreement, and to operate said road by any other lawful power."

By the fifth clause the defendants agreed that "the said railroad shall be completed and the cars run thereon from Broadway to Fulton Ferry on or before November 15, 1886," and "through Central avenue so far as the same is or may be graded on or before October 15, 1887; and to the Evergreens Cemetery as soon thereafter as the grading of the street will permit, unless delayed by legal proceedings or lawful authority over which it has no control; in which case the time so delayed shall be added to the times in which said road is to be completed and operated."

By the eleventh and thirteenth clauses, defendants agreed to pay the plaintiff monthly fourteen per cent of its gross receipts from passengers, and agreed "that the annual rent, commencing October 1, 1886, and for each and every year thereafter, shall amount to a sum not less than $15,000 per year," whether earned or not.

The defendants took possession of the completed road, but the plaintiff did not procure the requisite consents for the construction of the extension until in October, 1886. The defendants then commenced the work of construction, and while prosecuting it upon Central avenue were interrupted by the Broadway Railroad Company of Brooklyn and by the local authorities. Litigation followed and the plaintiff was enjoined

from proceeding with the construction in that avenue, the court holding that the consent of the Broadway company was requisite to the plaintiff's right to lay its railroad tracks upon it. Such consent was never obtained. The defendants meanwhile had completed about one-half of the entire proposed extension. In January, 1887, the defendants assigned the lease to the Brooklyn Cable Company which thereafter assumed the defendants' rights and liabilities under it. This company paid the plaintiff $1,916.45 as rent. Soon after the plaintiff was enjoined from laying its tracks in Central avenue the Cable company gave the plaintiff notice that it elected to hold the contract as broken by the plaintiff by its non-performance, and that the Cable company was ready to surrender the property it had received under it, upon being reimbursed for the expenditures incurred in complying with it.

The plaintiff paid no attention to this notice. The plaintiff abated $5,000 of the guaranteed rent of the first year, and brought this action for the balance for the remainder of the year being, after crediting the payment mentioned, $8,083.55.

The trial court found that plaintiff failed to perform its covenants with respect to the consents, and that such failure prevented the defendants from constructing the extension as contemplated by the lease, and therefore the guaranty of a fixed sum as rent never became operative.

Further facts are stated in the opinion.

*Benjamin F. Tracy* for appellant.

*Elihu Root* for respondents.

Landon, J. The plaintiff by the instrument of April 6, 1886, leased to the defendants for the term of its corporate existence the right to use an existing street railroad of about one mile in length, and agreed to perfect its chartered rights to extend the railroad about four miles further, and to confer such rights upon the defendants, who agreed to act under such perfected rights and to complete the extension, and as

completed the lease was to attach to it; and the defendants agreed to operate both the old and the extension as a cable railroad. The rent reserved to the plaintiffs·was to be at the rate of fourteen per centum of the gross earnings of the railroad and without any guaranty of the amount until October 1, 1886; but from and after that date the defendants guaranteed that the rent should not be less than $15,000 per annum. This action is to recover the guaranteed rent from February 1, 1887, to October 1, 1887. The defendants' answer in substance is that the guaranty was dependent upon the performance by the plaintiff of the conditions precedent, which were necessary to enable the defendants to complete the contemplated extension, and that these were not performed by the plaintiff, and thus the guaranty never became operative.

By the agreement, which for convenience may be called a lease, the plaintiff agreed to obtain the consents of the local authorities and property holders, which by statute, Ch. 252, Laws 1884, § 3, were necessary to perfect its right to construct the extension, "so as to allow the work of the second party to proceed without hindrance." The defendants agreed that "the said railroad shall be completed and the cars run thereon from Broadway to Fulton ferry on or before November 15, 1886." This required the completion of about one and one-half miles of the proposed extension. But the plaintiff did not procure the requisite consents until in October, 1886, and thus the defendants could not "proceed without hindrance," but were prevented from proceeding at all until after the day fixed for the guaranteed rent to begin.

It was provided in the lease that "in case the party of the first part shall be unable to procure the requisite consents for the construction of a cable road within sixty days from the execution of this agreement, and shall give notice of such failure in writing to the party of the second part, this lease and agreement shall, at the option of the said party of the second part, cease and determine," but the plaintiff, notwithstanding its failure, gave no notice thereof to the defendants.

By this delay the defendants suffered the loss of the season

most suitable for the work of construction. They commenced it, however, in October, 1886, and prosecuted it with diligence. Beyond Broadway the most considerable part of the remainder of the proposed extension lay in Central avenue. The defendants commenced the work of construction upon this avenue in February, 1887. The Broadway Railroad Company of Brooklyn, assuming to act under the authority granted to it by Ch. 461, Laws of 1860, had already commenced the construction of a railroad upon the same avenue.

The trial court found that its consent was necessary to allow the work of the defendants to "proceed without hindrance," and that that consent was refused. Three several actions were commenced in the Supreme Court; one by this plaintiff against the Broadway Railroad Company, one in the interest of this plaintiff against the same defendant, and the third in the interest of the said Broadway company against this plaintiff, all involving the plaintiff's right to construct its railroad in Central avenue. The result was that about July 1, 1887, this plaintiff was enjoined by the court from proceeding with the construction of the railroad therein. This injunction was effective to prevent the defendants from completing the railroad. Meantime, the defendants had assigned the lease to the Brooklyn Cable Company, a corporation organized, professedly, pursuant to the terms of the lease to take such assignment. The plaintiff alleges that the assignment is invalid because the corporation has not the paid-up capital required by the lease in case of an assignment, but we do not think it necessary to pursue this question. The defendants and their assignee had spent large sums of money in the construction of the extension of the railroad.

About July 20, 1887, shortly after the injunction, the Brooklyn Cable Company notified the plaintiff that it would hold the lease as broken by the non-performance of its conditions to be performed by the plaintiff, and that it was ready to surrender to the plaintiff all the property it had received under the agreement, upon being reimbursed for its expenditures in complying with the contract. The plaintiff paid no attention

to this notice. The trial court found that the portions of the route contemplated by the lease, upon which the defendants and their assignee were unable to construct and operate a railroad, were material and substantial parts thereof, and the failure of the plaintiff to procure the requisite consents prevented such construction and operation.

The plaintiff claims that it leased to defendants a railroad in being, and delivered possession of it to them, and also made certain covenants to promote the building and operation of its extension by the defendants; that the lease is complete, and plaintiff's default, if any, in regard to the extension, is no defense to the action for rent, and can only avail the defendants as a counterclaim, and this they have not pleaded.

The defendants claim that the lease was executory — at least as to the guaranteed amount; that the covenants of the lease were in this respect mutual and dependent, and that the certain amount of rent was guaranteed because the plaintiff's covenants, if performed, would have given to the defendants an opportunity to complete the railroad early enough to enable them to try to earn the rent they guaranteed to pay; and that the breach of the covenants on the part of the plaintiff resulted in the non-creation of that part of the railroad whose contemplated earnings were a substantial part of the consideration for the defendants' guaranty of a fixed amount of rent; also that the delivery of the perfected right to construct the extension was never fully made.

We think the judgment must be affirmed.

The lease recited that the agreements expressed in it were " for and in consideration of the mutual covenants and agreements herein contained, and bv each of said parties to be observed and performed."

The lease was two fold in its character; the plaintiff demised to the defendants an existing railroad, and reserved a percentage of its gross earnings as rent. It also assumed to demise its franchise and right to operate an additional line of railroad. We assume, without deciding, that the lease was valid. ( *Woodruff* v. *Erie Railway Co.*, 93 N. Y. 609.) The defendants

were ready and willing to treat it as valid. But the additional line of railroad had no existence, and the plaintiff's right to construct it was incomplete, and would remain so until it should procure the requisite consents of the property owners and city authorities. The lease would, therefore, be inoperative as a present demise of non-existent property, and could not be effective with respect to the right to create such property until the plaintiff should procure the consents. No present rent could be properly reserved out of the mere possibility of first acquiring the right to construct the railroad, and the contingent right of afterwards proceeding under it, however it might be as to compensation. Hence the plaintiff covenanted to procure the consents, and the defendants agreed thereupon to proceed with the construction. The construction was dependent upon the consents, and hence the plaintiff agreed to procure them so as to allow the defendants to proceed with the construction " without hindrance," and the defendants thereupon agreed to have a substantial part of the road completed before November 15, 1886, and also that the guaranteed rent should begin October 1, 1886. Thus the lease was an executed one with respect to the existing road and the rent reserved upon it, and an executory one with respect to the additional road, and the guaranteed rent to be reserved both upon it and the old road after the defendants should have both the time and opportunity specified in the lease to create the new, or certain substantial portions of it. The executory covenants of the lease were plainly dependent. True, the date when the guaranteed rent should begin was fixed, but it was fixed in reliance upon plaintiff's timely performance of the covenants on its part.

By the terms of the lease the plaintiff was to obtain the consents before the guaranteed rent should begin to accrue; such consents were a condition precedent to the existence of the right to create the additional railroad, much more to the plaintiff's ability to give defendants the possession of it, or of the right and power to take possession of it under the plaintiff. By the terms of the lease defendants' guaranty of the amount

of rent from October 1, 1886, was in consideration of the covenants and agreements " to be observed and performed " by the plaintiff.    Performance by the plaintiff was, therefore, a condition precedent to the liability of the defendants upon this guaranty.  (*Grant* v. *Johnson*, 5 N. Y. 247; *People's Bank* v. *Mitchell*, 73 id. 411; *Pike* v. *Butler*, 4 id. 360.)

The plaintiff urges that in case of a lease under which the tenant takes and remains in possession, the breach of a particular covenant on the part of the lessor is not a defense to the action for rent, but the proper subject of recoupment or counterclaim.   (Taylor's Land. & Ten. §§ 351–374; *Newman* v. *French*, 45 Hun, 65; *Etheridge* v. *Osborn*, 12 Wend. 529.)

The defendants are not called upon by this action to deny their liability for rent under the lease.    They have made some payments and it is not alleged that these are not equal to fourteen per centum of their gross earnings.    The plaintiff seeks recovery for a fixed amount, to begin to accrue October 1, 1886.    The question is not whether the defendants should pay rent, but it is at what rate?    They do not claim to have been evicted, but they do claim that before the guaranteed rate should begin the plaintiff should have given the time and opportunity specified in the lease to create and take possession of the additional premises, in consideration of which an additional rent was guaranteed, and that the plaintiff failed to perform.

The complaint proceeds upon this theory, for it alleges performance.

If the fixed amount of rent had been guaranteed from the beginning of the term, it is probable that defendants would have been obliged to counterclaim for damages, since in that case plaintiff's breach of its covenants would have been subsequent to the time when defendants' liability for rent became fixed.    Adjustment of mutual liabilities, and not absolute exemption from all liability upon the guaranty would have been the proper mode of measuring defendants' rights.    But here the additional rent is to accrue as the result of plaintiff's precedent performance; failing in such performance it has not acquired the right to such rent.

But the plaintiff insists that it is not properly chargeable with the non-performance of its covenants to obtain the requisite consents. It was enjoined from constructing its railroad upon Central avenue as the result of litigations in which the Broadway Railroad Company was the opposing party in interest. The plaintiff insists that it now appears that the Broadway Railroad Company had forfeited its charter by non-user of its franchises. It appears from the public reports of the decisions of the court that final judgment to that effect was obtained against that company subsequently to the trial of this action. (*People* v. *Broadway R. R. Co.*, 126 N. Y. 29.)

The plaintiff thence insists that that company was a wrong-doer in opposing and preventing the construction of the railroad upon Central avenue by the plaintiff, or by defendants under the plaintiff; that it had no right in the avenue and no consent to give or withhold, and that the plaintiff did not agree to overcome the resistance of a wrongdoer.

But we cannot go outside of the record in order to reverse this judgment. Besides, in the actions referred to, in which the plaintiff and the Broadway Railroad Company were parties, the court held that until judgment of forfeiture at the suit of the People should be obtained against the latter company, it had a right to construct and operate a railroad in Central avenue under the authority given by Ch. 461, Laws of 1860, and having constructed a portion of its railroad upon said avenue, the plaintiff was prevented by Ch. 252, Laws of 1884, § 14, from constructing a railroad thereon without the consent of the Broadway Railroad Company.

Neither the plaintiff nor defendants could proceed with the construction of the railroad upon Central avenue in the face of the decision and injunction. No appeal was taken. If we could take notice of the judgment in the case of *People* v. *Broadway Railroad Company*, we should still be confronted with the fact that it was not obtained until long after the plaintiff made default in procuring the consents, which during all the time for which it seeks to recover rent in this action

were, as a matter of fact, essential " to allow the work of the second party to proceed without hindrance." Practically, the plaintiff was to obtain for defendants the field for their work of extension; this was clearly the intention of both parties and is the essential basis of the contract; failure in this respect is the misfortune of the plaintiff.

Other defaults on the part of the plaintiff are found by the trial court which we do not deem it necessary to specify. Nor do we deem it necessary to consider whether the assignment by the defendants to the Brooklyn Cable Company aids their defense.

The judgment below was without prejudice to the rights of the plaintiff to recover otherwise than upon the guaranty of rent and should be affirmed. with costs.

All concur.

Judgment affirmed.